Leonel **BUENROSTRO**, et al., Plaintiffs,

v.

Pablo **COLLAZO**, et al., Defendants.

Civ. No. 89–0384(JAF).

United States District Court,
D. Puerto Rico.

Oct. 24, 1991.

Francisco A. Besosa, Goldman Antonetti Ferraiuoli & Axtmayer, San Juan, Puerto Rico, for plaintiffs.

Lou Ann Delgado, Supervisor, Antonio Fiol Matta, Director, Federal Litigation Div., Hector Rivera Cruz, Secretary of Justice, Com. of Puerto Rico, for defendants.

Saldaña Rey & Alvarado, San Juan, Puerto Rico, for López–Feliciano.

## OPINION AND ORDER

FUSTE, District Judge.

At 5:30 A.M. on March 29, 1988, six Puerto Rico police officers entered the apartment of plaintiff Leonel Buenrostro with neither a search nor an arrest warrant. Buenrostro was arrested in connection with a drug crime in New York. He was held for thirty-one days in horrific conditions in the State Penitentiary in Puerto Rico before the police realized that they had made an error and arrested the wrong person.[1] The police now admit that although Buenrostro had the same name and birth date as the suspect in New York, Buenrostro and the suspect had completely different fingerprints and photos. (It appears from the record that the actual suspect was Fausto Buenrostro, plaintiff's brother, who somehow obtained plaintiff's identification cards and showed those cards to police during a prior arrest in New York). Plaintiff Leonel Buenrostro was released and now sues under 42 U.S.C. § 1983, alleging that the arrest in his home without a warrant was illegal and that at some point long before the thirty-one days had passed the defendants had an obligation to check the photos and fingerprints and realize their errors. In addition, Buenrostro's wife and three children claim independently for a violation of their own constitutional rights as a result of the warrantless entry into their home, and also on a pendent state law claim for infliction of emotional distress. Each claim is clouded by a series of procedural complications brought to our attention by motions which we deal with in turn.

### Facts

Leonel Buenrostro was at home with his wife and three daughters at 5:30 A.M. when the six police officers came knocking. According to Buenrostro, they identified themselves as police officers, and then entered the home without his consent. The officers allege that consent was given, a matter over which there is a material dispute of fact.

They placed Mr. Buenrostro under arrest. They had no search warrant and no arrest warrant. They told plaintiff that he was wanted in New York on drug charges. The only information they had was that a Leonel Buenrostro, with the same birthdate as plaintiff, and with brown eyes, was wanted in New York. The Puerto Rico police had located plaintiff using the name through the Puerto Rico driver registration system. Through the use of the system they obtained plaintiff's social security number and address. He was handcuffed, taken to police headquarters, and put in a cell. Eventually, Buenrostro was brought before a judge who sought to get Buenrostro to waive the extradition hearing. When Buenrostro refused and asserted his innocence, the judge ordered his immediate detention in the State Penitentiary. A sworn statement was made out by one of the police officers stating that Buenrostro was wanted in New York. According to plaintiff, the officer swearing out the complaint lied. For instance, plaintiff claims that the officer swore that New York had already issued a decision to extradite when in fact it was not issued until later. A magistrate found probable cause to hold plaintiff. Two more extradition "hearings" were held at which a judge tried to get Buenrostro to waive his rights to fight extradition, but

---

1. The horrors to which Mr. Buenrostro was subjected while incarcerated in the Puerto Rico prison system have been well documented before another judge of this court who is handling a system-wide prison reform case brought on behalf of inmates. The record in that case describes in lurid detail the overcrowded, dangerous, filthy conditions suffered by all confinees in Puerto Rico. *See, i.e., Morales Feliciano v. Romero Barceló,* 672 F.Supp. 591 (D.P.R.1986).

Buenrostro refused each time. *Mr. Buenrostro was in the State Penitentiary for thirty-one days* before the police finally compared the photos and fingerprints of the suspect wanted in New York and allowed for the release of Mr. Buenrostro, clearing him of any suspicion in the crime. The defendants do not dispute that the photo and fingerprints were in police custody at the time of the arrest (either in New York or Puerto Rico, it is not clear when they were actually sent to Puerto Rico) and that it was just a matter of requesting them and making the comparison. (As stated earlier, it now appears that the individual actually wanted in New York was a relative of Leonel Buenrostro who had used the plaintiff's name and birth date when he (the relative) was booked in New York on a previous occasion).

### Timeliness: The Four Officers

The original complaint did not allege the names of all of the police officers involved, but instead listed twenty "John Does". Later, plaintiff moved to amend the complaint to add four officers ("the officers"), all of whom now claim that the action is untimely as to them.[2] The officers concede that the original complaint was timely filed as to all the named defendants contained in it at the time. The parties agree that the one-year Puerto Rico tort statute of limitations is applicable to this action. 31 L.P.R.A. § 5298. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). The officers complain of untimeliness because although the allegedly illegal arrest took place on March 29, 1988, the permission to amend the complaint was not granted until December 27, 1989, and none of them were served until even later.

Fed.R.Civ.P. 15 allows an amended complaint which brings in a new party to be considered timely if the newly-joined party had notice of the institution of the action within the limitations period. The officers seem to concede that if the original complaint (which did not contain them) had been *served* against all the other defendants, at least some of whom are employed by the police department, within the one-year limitations period, they (the lately added officers) could be charged with "knowledge" of the institution of the action rendering the late amendment timely.

In this case, however, there is a snag. Although the original complaint was timely filed with the court within one year, the plaintiffs took advantage of Fed.R.Civ.P. 4(j), which allows them to make actual *service* on the defendants within 120 days after filing of the complaint, even where the extra time brings the service of the complaint past the one-year filing deadline. In other words, according to the officers, since *no one* was served until after the one year time had run, there can be no constructive knowledge within one year to trigger the relation-back provisions of Rule 15. The officers contend that while Rule 4(j) extends timely service for up to 120 days after the limitations period runs, that rule has no effect on the requirement of actual notice to non-named persons who the plaintiff seeks to add later. *Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986).

 According to defendants, then, the service past the limitations period on the defendants named in the first complaint cannot be relied on by plaintiffs as justifying Rule 15 "relation back" and the complaint must fail as to the newly-added police officers. Even assuming that defendants' arguments are true, plaintiffs' case survives for a different reason. Unfortunately for the officers, there is a completely independent basis for sustaining the timeliness of the amended complaint and its service. Not only are state limitations periods adopted by the federal court for purposes of section 1983 suits, but the state tolling provisions related to those limitations periods are also adopted. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Therefore, Puerto Rico's tolling provisions must be applied along with its one-year limitations period. Puerto Rico law provides that a statute of limitations begins to toll in an action as soon as the action is filed in court, not

---

**2.** The four are: Angel Morales Goñez, Edwin Teruel, José M. Collazo, and Armando Tapia.

when the parties are served. 31 L.P.R.A. § 5303. *Feliciano v. Puerto Rico Aqueduct & Sewer Authority*, 93 P.R.R. 638, 644 (1966); *Federal Insurance Co. v. Banco Popular*, 750 F.2d 1095, 1098 (1st Cir. 1983). In an action against joint and severally liable tortfeasors, tolling of the statute of limitations as to one tolls the statute as to all. 31 L.P.R.A. § 5304. *Rodríguez Narvaez v. Nazario*, 895 F.2d 38, 43 (1st Cir.1990). The amended claims against the four officers are timely and the motion to dismiss on that basis is *denied*.

### Res Judicata and Stay Request

The next hurdle for plaintiffs is placed by the fact that a related action has proceeded in the Puerto Rico Commonwealth courts to a disposition on the merits. Defendants at this point seek to stay our action until that matter reaches the Puerto Rico Supreme Court. We have no intention of waiting for that eventuality, but we instead review the Puerto Rico trial court decision for any possible *res judicata* effect. *Explosives Corp. of America v. Garlam Enterprises Corp.*, 817 F.2d 894, 900 (1st Cir.1987) (Federal court must review Puerto Rico Superior Court judgments for possible collateral estoppel effect regardless of whether they are on appeal or not).

■ The local action, Civil No. FDP 89–215(404), in the Superior Court of Carolina, included as defendants the Commonwealth of Puerto Rico, Ismael Betancourt Lebrón (the Superintendent of Puerto Rico's Police Department), the Clerk of the District Court of Puerto Rico, San Juan Section, the Chief Judge of the District Court of Puerto Rico, San Juan Part, and the Administrative Director of the Criminal Justice Information System. The suit alleged only local law negligence, and sought both monetary damages and an order that the various record keepers purge their files of any information relating to the erroneous arrest.

The judge in the matter found that Betancourt Lebrón was not the superintendent at the time of the acts and, therefore, could not possibly be liable. Since plaintiffs have agreed voluntarily to drop him as a defendant from the suit, there is no *res judicata* problem as to him, and the complaint as to him is *dismissed*.

Three of the defendants before us were sued in their official capacities in the Commonwealth court action, all on the issue of purging records related to the arrest. Since there was a complete identity of the parties as to that issue in the Commonwealth suit and the one before us, and since the matter went to resolution on the merits, we are required by Puerto Rico law to give *res judicata* effect to the matter. We, therefore, *dismiss* the complaint before us as to the Clerk of the District Court of Puerto Rico, San Juan Part, the Chief Judge ("Juez Administrador") of the District Court of Puerto Rico, the Administrator of the Hato Rey Judicial Center, and the Administrative Director of the Criminal Justice Information System.

There is the question as to whether the policemen, sued before us for the first time, can assert issue preclusion on the theory that the local court's finding in the case against the Commonwealth, in which the judge found that the police officers did not act negligently because they acted pursuant to established Puerto Rico procedure, precludes the litigation of the section 1983 action against them here. It is the theory of the policemen that the finding of no negligence by the local judge precludes the possibility of finding that they deprived plaintiff of his federal constitutional rights.

■ The police officers are attempting to invoke the doctrine of so-called non-mutual defensive collateral estoppel. The non-mutual defensive collateral estoppel doctrine is as follows: Plaintiff "P" sues Defendant "D1" and loses on all issues on the merits. Plaintiff "P" then sues Defendant "D2" in a situation where one of the necessary elements of the claim is one of the issues that "P" lost on in the first action. "D2" can then raise the previously litigated issue as a defense against "P" even without relitigating it, and without "D2" having ever been a party to the prior action. *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788

(1971). The doctrine is a departure from the formally prevalent rule that collateral estoppel, to come into play, required "mutuality". That is, neither party in the subsequent action could claim preclusive effect of a determination unless both parties were bound by the prior judgment. In other words, no party who was not a party to the first action could claim for himself the benefit of determinations that took place there. The requirement of this doctrine has all but disappeared in both federal and state law. *Parklane Hosiery Co. Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Since the prior action was a Puerto Rico commonwealth court case, we must apply the collateral estoppel rules of Puerto Rico. *Kremer v. Chemical Consts. Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). The problem for defendants is that Puerto Rico law, always unique in the area of *collateral estoppel,* is unsettled about whether the doctrine of mutuality has in fact been dropped.

The relevant statutory section would seem to preclude the possibility that mutuality could be dropped, since the requirement of mutuality seems to be directly written into the statute in its "identity of parties" element.

> In order that the presumption of the res adjudicata may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such.

31 L.P.R.A. § 3343.

The practice of other jurisdictions in jettisoning mutuality is precisely the act of negating the requirement of identity of parties. It seems difficult to see how the rule could develop in the way of discarding mutuality while the relevant statute remains written as it is.

Defendants argue, however, that the Supreme Court of Puerto Rico has opened the door for the abandonment of mutuality. *A & P General Contractors, Inc. v. Asociación Caná, Inc.*, 110 D.P.R. 748 (1981). In that case, the court faced an issue of so-called offensive use of collateral estoppel, a plaintiff in a later action who seeks to estop a defendant from relitigating issues which the defendant had lost in a previous case. *See Parklane Hosiery Co. Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (leading federal case of offensive collateral estoppel). The *A & P* court found that the Puerto Rico statute would not allow for offensive use of the type claimed. We agree with defendants that the *A & P* court was less unsympathetic to the use of defensive collateral estoppel by new defendants against a previously unsuccessful plaintiff, but the court nowhere held that Puerto Rico was abandoning the doctrine of mutuality, nor that it was accepting the concept of nonmutual defensive collateral estoppel. Without a clearer instruction from its highest court, we refuse to take Puerto Rico law in bold new directions. We note that no other federal court cases we have reviewed have seen fit to do away with mutuality under Puerto Rico law. *Esteves v. Ortiz Alvarez*, 678 F.Supp. 963 (D.P.R.1988); *Schneider v. Colegio de Abogados de Puerto Rico*, 670 F.Supp. 1098 (D.P.R.1987).

We point out that it is not a problem that the section 1983 claims were not brought up in the local court action. If the action before us was against the same defendants (on the basis of a section 1983 violation) that were exonerated before the local court (on a tort theory), the action before us as to those defendants would be barred, since Puerto Rico law bars the relitigation of not only those claims that were actually litigated, but those that could have been litigated as well. *Mercado Riera v. Mercado Riera*, 100 P.R.R. 939 (1972); *see also Migra, supra; Allen, supra,* (which hold that section 1983 actions in federal court following state court suits are not exempt from a state law rule which requires all claims arising from the same nucleus of facts to be litigated in the same action). In a jurisdiction where mutuality lives, however, the failure to raise claims in a prior suit as to

*some* defendants has no effect on the permissibility of raising those same claims against *other* defendants.

Assume a jurisdiction which has abandoned mutuality. Assume "A" sues "B" in action one, raising only a tort claim, and loses. "A" then sues "C" on a tort theory and on a section 1983 theory. "C" can use nonmutual collateral estoppel to raise a defense not only as the tort claim actually litigated against "B", but also as to the section 1983 action that *could* have been litigated against "B".

In Puerto Rico, with the retention of mutuality, "C" can raise an estoppel defense against neither the tort claim nor the section 1983 claim, since the identity of the parties is lacking. Although "B" can defend against the later section 1983 suit against it, since it should have been brought in the prior action against "B", the fact that no section 1983 claim was made against "B", has no effect on "C".

Therefore, we find that defendant members of the police department, Pablo Collazo Marrero, Angel Morales Goñez, Edwin Teruel, José M. Collazo, Armando Tapia Suárez, and Carlos López Feliciano, not parties to the prior action, cannot claim preclusive effect of the prior judgment or findings in the case against the Commonwealth.

### Summary Judgment as to the Wife and Daughters

■ Defendants allege that the family members do not have standing to sue under section 1983. To the degree that the claim alleged would have been merely a vicarious suit by the family "through" their father's claim, defendants are correct that there is no standing, since section 1983 actions are personal and do not inure to any person other than the person injured. *Valdivieso Ortiz v. Burgos,* 807 F.2d 6, 7 (1st Cir.1986).

■ Defendants' attempt to dismiss the family members for lack of standing fails, though, since the family members have alleged two separate causes of action of their own, not merely claimed "through" Mr. Buenrostro. First, all the family members had their own privacy interests in the family home, which the police officers allegedly entered without consent or any warrant of any kind. The fourth amendment protects the citizen from unreasonable searches and seizures, helping to allow people to feel secure in their homes. In this case, on the facts as alleged, at least several police officers burst into a private dwelling at 5:30 in the morning, scaring the daylights out of the inhabitants. Though they were "searching" for Mr. Buenrostro, that fact is incidental to the family's own section 1983 claims. The relevant fact is that the police violated the sanctity of the private dwelling with no warrant or legally cognizable exception to the warrant rule. If the police broke into Ms. Buenrostro's home without a warrant to search for contraband, the possible section 1983 violation would be facially obvious. We think the police are in no better position merely because their violation of the privacy interests protected by the fourth amendment was also coincidentally in order to commit an illegal arrest of one of the individuals living in the house. "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United States District Court,* 407 U.S. 297, 313, 92 S.Ct. 2125, 2134–35, 32 L.Ed.2d 752 (1972); *see United States v. Cardona,* 903 F.2d 60, 67 (1st Cir.1990). That the family members cannot claim vicariously on Mr. Buenrostro's section 1983 suit does not mean that his suit in any sense divests them of their own individual actions. There remains, of course, the matter of whether the family members can prove these claims factually, but we find that they have stated the cause of action sufficiently.

In addition to their own section 1983 causes of action, the family members have an independent basis to sue for various Puerto Rico torts. Since they have their own federal action under section 1983, the family members' local law claims are cognizable as pendent state claims.

### Prison Officials

Plaintiff sues two officials in the Corrections Department of the Commonwealth of

Puerto Rico in their individual capacity, alleging that plaintiff's pleas of innocence to the prison guards were ignored, and that the prison conditions under which plaintiff was held were barbaric.

■ We find no cause of action stated here. Even assuming that the arrest and commitment by judicial officers of plaintiff was illegal, and even assuming that the continued failure on the part of the police to rectify their error in some time less than thirty-one days was a constitutional violation, none of those misdeeds can be charged to the Corrections Department or its staff. If, as we assume, plaintiff was sent to the State Penitentiary with a facially-valid commitment order, there certainly can be no duty on the part of the Department of Corrections to verify or otherwise review the correctness of the judicially issued order. Nor can we see that prison guards are under a duty to act when a prisoner under their custody is asserting his innocence, no matter how forcefully. The process to which an individual is due prior to incarceration by the state is *judicial* process. *Habeas corpus* proceedings are available for those who believe themselves wrongly held. Prison guards cannot and should not be in the business of retrying the guilt or innocence of the persons already found by a court to be subject to incarceration.

■ The claim of barbaric conditions at the State Penitentiary requires a slightly different analysis. First, the conditions that Mr. Buenrostro suffered at the prison are certainly relevant to the damages aspect of his suit against those members of the police force who he alleges are responsible for his being sent to and held in the prison in the first place. But his innocence has no bearing on the duty of prison officials to provide him with any particular standards of living conditions different from any other prisoners. As stated above, prison guards and officials can certainly have no way of knowing which of the prisoners sent them by the court are innocent. Mr. Buenrostro stands, in relation to the prison officials, in exactly the same position as any prisoner held in the State

Penitentiary under the same conditions as himself. Any cognizable claim with regards to the conditions of incarceration itself would need to be based on the eighth amendment, and would be subject to all the difficulties that any prison conditions case faces. At any rate, that claim is in no way properly pleaded in the suit before us. There is no mention made of the eighth amendment, and no detail as to which of the conditions suffered might have been below constitutional standards. No discovery was conducted on the theory of a prison conditions case, and we will not let it proceed as one at this point. Plaintiffs' attempts to bring in the prison officials as parties incident to the illegality of his being incarcerated must fail. The complaint is *dismissed* in its entirety as to Carmelo González Rivera and Mercedes Otero.

### *Failure to State a Claim and Qualified Immunity*

The defendant police officers seek to have the complaint dismissed because Mr. Buenrostro has failed to state a claim in the sense that he has failed to set forth any set of facts that could be construed as constituting a constitutional violation. Alternatively, they argue that even if a constitutional violation was committed, they are entitled to qualified immunity under the doctrine of *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). *Harlow* holds that even if an official acting under color of state law deprives an individual of rights protected by the Constitution, the official can be protected from a damages suit in his individual capacity so long as the right violated was not clearly established at the time of the violation.

■ For more than ten years it has been completely settled law that the police may not make a warrantless entry into a citizen's private dwelling for the purpose of effectuating the citizen's arrest, absent exigent circumstances or consent. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). If, as Mr. Buenrostro contends, the police entered his dwelling without his consent and effectuated an ar-

136

rest without any warrant, they have violated one of the clearest and least ambiguous constitutional protections. The defendant arresting police officers and those charged with "improperly" training them knew or should have known of this clearly-defined rule. The presence or absence of reasonable cause is completely irrelevant to the illegality of the arrest in the home. There is no basis either for a dismissal of the complaint as to this claim, or for the grant of qualified immunity. The defendants will answer in their individual capacities as to this claim.

■ But the long incarceration did not necessarily flow from the warrantless nature of the arrest in the home. Had Mr. Buenrostro been on the sidewalk in front of his home when the police arrived, presumably he would have spent just as long in jail. The length of the incarceration seems to be more a result of the willingness of the police to rely for more than a month on three bits of information, name, birth date, and eye color, when fingerprints and photos could have been easily obtained before or shortly after the arrest.

In *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) the Supreme Court handled a case of mistaken identity similar to this one. Linnie McCollan's brother, Leonard, had been arrested on a drug charge. At the time of the arrest, Leonard was carrying a copy of his innocent brother's driver's license, an exact replica in all respects, except that it carried a photo of Leonard instead of Linnie. Leonard was booked under Linnie's name and with all of Linnie's personal information as it appeared on the license. Later, when Leonard skipped bail, Linnie was arrested as the wanted person. He was held for three days, over the New Year's weekend, until a comparison of photos indicated the mistake. The Supreme Court, based on the short duration of the error, and the intervention of the holiday weekend, held that no constitutional violation had occurred. The Court did say, however, that "[d]epending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursu-

ant to a valid warrant [in this case a probable cause hearing] but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty ... without due process of law.'" *Baker*, 443 U.S. at 146, 99 S.Ct. at 2695–96.

We think that plaintiff, in alleging a thirty-one day incarceration in the face of repeated assertions of innocence, in the face of his repeated refusals to waive an extradition hearing, in light of the fact that the only information relied on was a bare name, birthdate, and eye color, has certainly stated a case for the kind of constitutional violation that *Baker* foresaw. Defendants have not met their burden of showing that failing to take the simple steps of verifying the photo or fingerprints *at some point prior to thirty-one days after arrest* was not clearly established as a violation of due process at the time that it occurred. No one can live in peace with the knowledge that he or she may spend over a month in the State Penitentiary because some drug dealer picked up his or her wallet one day on the street, *when the mechanism to avoid such an abuse is so clearly available.*

We note that mere negligence is insufficient under section 1983 to pin liability on public officials, but we are convinced that the plaintiff here has stated facts sufficient to state a cause of action for the kind of deliberate indifference necessary to sustain a section 1983 action. This is especially true of Officer Tapia, alleged to have in his possession the photo and fingerprints which proved the mistake at least seven days before Mr. Buenrostro's release.

### Conclusion

1. The complaint is *dismissed with prejudice* by voluntary dismissal as to Ismael Betancourt Lebrón.

2. The motion to dismiss for untimeliness (Docket Document No. 35) filed by codefendants Angel Morales Goñez, Edwin Teruel, José M. Collazo, and Armando Tapia is *denied* in its entirety.

3. Defendants' motion to dismiss the claims of the coplaintiffs Brunilda Pérez

Matos and Raysa, Eileen and Leonelis Buenrostro (spouse and children of Leonel Buenrostro) for lack of standing (Docket Document No. 42) is *denied* in its entirety, and we clarify that these named family members are proceeding both on Puerto Rico law claims and their own section 1983 actions.

4. Defendants' motion to dismiss the claim of all plaintiffs as to codefendants Carmelo González Rivera and Mercedes Otero is *granted.* (Docket Document No. 42).

5. Defendants' motion for summary judgment on the substance of the illegal arrest/detention claim is *denied.* (Docket Document No. 42). We reserve judgment as to the issue of qualified immunity pending trial. (Docket Document No. 42).

6. The motion to stay this proceeding pending the result of an appeal to the Puerto Rico Supreme Court in a related case is *denied.* (Docket Document Nos. 65 & 69).

7. We *dismiss* all claims as to defendants Clerk and Chief Judge ("Juez Administrador") of the District Court of Puerto Rico, San Juan Part, Administrator of the Hato Rey Judicial Center, and Administrative Director of the Criminal Justice Information System, as the action against them is precluded by the conclusion of the prior litigated matter of *Leonel Buenrostro, et al. v. Estado Libre Asociado de Puerto Rico, et al.,* Civ. No. FDP–89–215, Superior Court of Puerto Rico, Carolina Part, Carmen Rita Vélez Borrás, Judge. (Docket Document Nos. 65 & 69).

IT IS SO ORDERED.