Warren L. BROWN, Plaintiff, Appellant,

v.

Roland IVES, et al., Defendants, Appellees.

No. 96–1954.

United States Court of Appeals, First Circuit.

Heard July 28, 1997.

Decided Nov. 7, 1997.

Paula House McFaul, Portland, ME, with whom John J. Eisenhart, Scarborough, ME, and McFaul & Eisenhart, Portland, ME, were on brief, for appellant.

James D. Williams, III, Assistant Attorney General, Augusta, ME, with whom Andrew Ketterer, Attorney General, and Peter J. Brann, Assistant Attorney General, were on brief, for appellees.

Before BOUDIN, Circuit Judge, GIBSON,* Senior Circuit Judge, and POLLAK,** Senior District Judge.

BOUDIN, Circuit Judge.

Warren Brown appeals from the dismissal of his civil rights claims for damages under 42 U.S.C. § 1983. The claims trace back to

* Hon. John R. Gibson, of the Eighth Circuit, sitting by designation.

** Of the Eastern District of Pennsylvania, sitting by designation.

an affidavit, filed by a caseworker in connection with a child protection proceeding, that labeled Brown an "untreated sex offender." As usual, where a motion to dismiss has been granted, we assume the truth of the allegations in the complaint and construe it in the light most favorable to the opponent of the motion, here Warren Brown. *See Harper v. Cserr,* 544 F.2d 1121, 1122 (1st Cir.1976).

Warren Brown is the paternal grandfather of two minor children, Thomas and Me'chelle Brown, born in 1986 and 1988, respectively. From 1989 to 1993, Brown often looked after the children, sometimes overnight, at the request of the children's mother, Kathi Duncan. In November 1989, Thomas Brown allegedly told his mother that Warren Brown had sexually abused him.

Kathi Duncan reported the charge to the Maine Department of Human Services ("the Department"). Apparently the Department investigated the charge, but no official action was taken, and Warren Brown continued to baby-sit for the children regularly at Kathi Duncan's request. But in May 1993, Duncan reported to the Department that Warren Brown had endangered Me'chelle Brown, through faulty supervision, allegedly because he was drunk. A Department caseworker, Donna Niemi, later interviewed Thomas Brown who referred again to the alleged 1989 sexual abuse.

At a hearing on June 10, 1993, in the state court, Duncan consented to a child protection order requiring her to keep the children away from Warren Brown and granting the Department access to the children. *See* 22 M.R.S.A. §§ 4031, 4036. In support of the order Niemi filed an affidavit, in which she described Warren Brown's alleged negligent supervision of Me'chelle Brown. Niemi's affidavit also described briefly Thomas Brown's November 1989 allegation of sexual abuse and said that the child had confirmed to Niemi that the incident had occurred. The affidavit described Warren Brown as "an untreated sex offender."

Niemi, and perhaps other Department officials, then arranged for Warren Brown to be professionally evaluated for his alleged behavior and also for alcohol abuse. Warren Brown cooperated in the hope of regaining contact with his grandchildren. Thereafter, according to Warren Brown, he was told by Department officials that he had missed appointments and no further treatment or evaluation would be offered. Warren Brown claims that he did not miss any appointments.

In July 1993, the Department obtained a court order under the same child protection provisions granting it temporary custody of the children based on charges that Kathi Duncan had abused them. The Department then sought full custody of the children. Warren Brown sought to intervene, was rejected and then renewed his motion, invoking a new state statute that allowed judges to grant grandparents intervenor status in child protection proceedings where this would serve the interests of the child and the purposes of the statute. 22 M.R.S.A. § 4005-B. The renewed motion was denied after a hearing, and a later appeal by Brown through the state appellate courts was fruitless.

In February 1995, the state court granted full custody of the children to the Department, with visitation rights for the parents. The order provided that family reunification efforts would continue. But in October 1995, Kathi Duncan consented to an order terminating her parental rights under a separate subchapter of the Maine statute, and in January 1996, the state court terminated the parental rights of the child's father—Warren Brown's son—who did not appeal. *See* 22 M.R.S.A. §§ 4050-4058.

In the meantime, in November 1995, Warren Brown brought the present section 1983 action in the federal district court in Maine. The now pertinent portion of Brown's complaint charged that Niemi, and several other Department employees connected to the case, had violated Warren Brown's due process rights under the 14th Amendment by libeling him in the Niemi affidavit, interfering with his access to the child protection proceedings, and ultimately depriving him of contact with his grandchildren. Brown sought damages of $1.2 million and asked the court to enjoin the proceedings to terminate his son's parental rights.

In July 1996, the district court granted the defendants' motion to dismiss. On the claim for injunctive relief, the district court held that the state proceedings sought to be enjoined had concluded and that the request for relief was now moot. The court also eliminated certain of the defendants—primarily higher-level officials—on the ground that no sufficient connection between them and the events in dispute was adequately alleged.

As for the claims against Niemi and other Departmental employees associated with the case, the dismissals were based on qualified immunity. The district court held that neither the reputational nor associational rights asserted by Warren Brown were "clearly established" to the extent needed to overcome qualified immunity, and the court also held that there was no clearly established law to show that the Department's actions violated his substantive due process rights under a "shock the conscience" test.

Brown now appeals from the dismissal of his damage claims. Our review is plenary. *Providence School Department v. Ana C.,* 108 F.3d 1, 2 (1st Cir.1997). Because we find that Niemi was herself protected by qualified immunity, there is no reason to discuss those who were less directly involved.

 1. "[G]overnment officials performing discretionary functions, generally are shielded [by qualified immunity] from liability for civil damages insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (emphasis added). The test is objective; claims of malice do not overcome qualified immunity. *See Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987). Nor is it enough that the right claimed to have been violated has been recognized at an abstract level: existing case law has to give the official reason to know that the specific conduct was prohibited. *See id.* at 640, 107 S.Ct. at 3039.

 A thumbnail version of Brown's constitutional claim is as follows. Niemi's charge that Warren Brown was an untreated sex offender was made without a thorough investigation; it foreseeably frustrated Warren Brown's efforts to maintain contact with his grandchildren; and because the charge somehow became public it injured Warren Brown's public reputation. Thus, Brown says, Niemi's actions violated his due process rights of family integrity and freedom from governmental falsehood, and her conduct as a whole "shocks the conscience" under *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952).[1]

Starting with family integrity, a few cases suggest that grandparents may, in some circumstances, have some constitutionally protected rights in relation to their association with their grandchildren. We spoke of this possibility in *Watterson v. Page,* 987 F.2d 1, 8 n. 6 (1st Cir.1993), limiting our remarks to grandparents who were residing with the grandchildren. *See also Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). Protection of nonresident grandparents—like Warren Brown—has an even slimmer pedigree in the case law. *Compare Drollinger v. Milligan,* 552 F.2d 1220, 1227 n. 6 (7th Cir.1977), *with Ellis v. Hamilton,* 669 F.2d 510, 513 (7th Cir.), *cert. denied,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982).

Similarly, in one case the Supreme Court recognized a protected due process right against a false government designation made with no opportunity for challenge. *See Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). But in *Paul v. Davis,* 424 U.S. 693, 711–12, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976), the Supreme Court ruled that the designation itself had to change the victim's legal status and that mere damage to reputational interests did not rise to a constitutional violation. *See also Siegert v. Gilley,* 500 U.S. 226, 233–34, 111 S.Ct. 1789, 1793–94, 114 L.Ed.2d 277 (1991). Here Warren Brown's legal status was not changed by Niemi's charge: he

---

1. The complaint also alleged in general terms that Niemi or others barred Warren Brown from the courtroom; but custody proceedings are often closed to the public, and Warren Brown was in fact able to file and pursue his motion to intervene, albeit without success.

remained a grandparent entitled to whatever rights a grandparent might have under Maine law.

But even if Warren Brown had constitutionally protected interests in visitation with non-resident grandchildren or against reputational harm, he has no precedent to show that the circumstances of his case come even close to a due process violation. The state has a very strong interest, repeatedly recognized, in the protection of children from abuse, whether by their parents or anyone else. *See, e.g., Ginsberg v. New York,* 390 U.S. 629, 640, 88 S.Ct. 1274, 1281, 20 L.Ed.2d 195 (1968). A special responsibility rests on agencies like the Department, and on caseworkers like Niemi, to investigate colorable charges that come to their attention and institute appropriate proceedings where warranted. Often, the only witness, other than the charged offender, is the child itself.

Here, Thomas Brown had'apparently twice repeated the charge that his grandfather had engaged in abusive sexual conduct; Warren Brown does not dispute that the charge was made by his grandson. The child's mother also reported that, due to drunkenness, Warren Brown had endangered Me'chelle. Because the children's mother had continued to entrust the children to Warren Brown, Niemi could certainly have thought that an initial protection order was important and ought to be sought immediately.

Niemi herself had no authority to bar Warren Brown from contact with his grandchildren while they were still in their mother's care. Niemi's remedy was to begin a court proceeding and to tell the court what she had learned. Then it became the court's responsibility to decide what to do next. Of course, Niemi might first have conducted a further investigation into the alleged sexual abuse claim, now several years in the past, but the precedents impose no such constitutional obligation. On the contrary, agencies like the Department have wide latitude to pursue investigations, and begin proceedings based on colorable charges of child abuse. *See Frazier v. Bailey,* 957 F.2d 920, 931 n. 12 (1st Cir.1992).

For the same reasons, there is no prospect that Niemi's conduct can be described as so outrageous as to constitute a due process violation under *Rochin*'s "shock the conscience" test. That standard does have vitality in this circuit, but it is confined to situations of brutal or otherwise outrageous behavior. *See Souza v. Pina,* 53 F.3d 423, 424–27 (1st Cir.1995). In the present case, a caseworker's accusation incident to a judicial proceeding—possibly mistaken but made with colorable basis—is not even wrongful conduct, let alone outrageously so.

2. There is lurking in this case a due process claim of a somewhat different character. What is mainly troubling here is not the caseworker's charge or the supposed lack of adequate prior investigation, but something quite different: it is Warren Brown's apparent inability thus far to contest in court the allegations that (quite apart from any damage to his public reputation) may effectively have led to judicial relief that cut him off from contact with his grandchildren.

This outcome cannot be attributed to Niemi or any other of the named Departmental defendants. They were entitled to begin the proceedings, and they did not issue the orders that denied Warren Brown's intervention requests or limited his access to his grandchildren. Rather, the outcome raises questions about the procedural fairness of judicial actions denying intervention and—to the extent that they did so—cutting off Warren Brown's access to his grandchildren.

Maine's judges are absolutely immune from damage claims based on their judicial decisions. *See Pierson v. Ray,* 386 U.S. 547, 553–54, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967). Nor can we review decisions of the Maine courts even for constitutional error; only the Supreme Court can do that. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923). This leaves open the possibility of injunctive relief against ongoing state proceedings, although it too might face obstacles short of the merits. *See, e.g., Trainor v. Hernandez,* 431 U.S. 434, 444, 97 S.Ct. 1911, 1918, 52 L.Ed.2d 486 (1977) (abstention doctrine).

Warren Brown did seek such an injunction in the district court but has not appealed that

court's dismissal of the claim as moot. And the merits are far from clear: the state obviously has an interest in the conduct of child protection proceedings and in narrowing the issues to the welfare of the children and the interests of those most immediately concerned with their welfare, usually the parents. The Maine statute has struck a compromise, permitting the grandfather to seek intervention but only with the court's permission based on the best interests of the child.

■ The possibility remains of unfair application of the statute in an individual case, but whether an individual error would give rise to a federal remedy is another matter. So long as state law provides an avenue of relief—here, an appeal to higher courts—even a deprivation of protected rights does not automatically give rise to a due process claim. *See Parratt v. Taylor,* 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981). But this subject is fraught with difficulty and we do not pursue it here.

As it happens, state law may still offer Warren Brown some opportunity for relief if the grandchildren are in foster care or are otherwise not yet placed for adoption. The initial protection order did effectively bar him from contact; but it was only an interim order, entered with the consent of the children's mother who during her custody of the children could herself have restricted Warren Brown's contact. Subsequent orders transferred custody to the Department and then terminated, successively, the parental rights of the children's mother and father, but none of those orders was directed at Warren Brown.

The state's counsel told us at oral argument that there is no currently effective order barring contact between Warren Brown and his grandchildren, and we can find no trace of such an order in the record. So long as the children have not been placed for adoption or formally adopted, it is at least possible under Maine law that Warren Brown could still apply for standing and intervenor status in the protection proceeding that transferred custody of his grandchildren

to the Department. 22 M.R.S.A. § 4005–B(2). If it were granted, he could also "request the court to grant the grandparent reasonable rights of visitation or access." 22 M.R.S.A. § 4005–B(6).[2]

Family issues, including abuse and custody, are among the most difficult for the law to resolve. Standards tend to be vague, situations may be wrenching, and the legal tools at hand are often clumsy. But, especially in the family-law realm, federal damage actions under section 1983 have usually proved to be an ineffective means of adjusting disputes with the authorities. *See generally Ellis v. Hamilton,* 669 F.2d at 515–16. There may be exceptions, but this case is not among them.

*Affirmed.*

---

**2.** Under Maine law, adoption (or in some cases placement for adoption) does cut off such statutory grandparent rights but does not prohibit prospective or actual adoptive parents from permitting contact between a child and grandparent. 22 M.R.S.A. § 4005–B(6).