Edgar RODRIGUEZ–OQUENDO, Elsa
Perez–Adorno, and the marital society
which they comprise, Plaintiffs,

v.

Pedro A. TOLEDO–DAVILA, his wife,
and their marital society; Salvador
Padilla, his wife, and their marital
society; and their marital society;
and Jose Gomez–Gonzalez, his wife,
and their marital society; John Doe
and Richard Roe, Defendants.

No. Civ. 97–2432(JAF).

United States District Court,
D. Puerto Rico.

Feb. 23, 1999.

128

Robert Millan, San Juan, PR, for plaintiffs.

Jose Diaz Espinosa, Federal Litigation Division, Dept. of Justice, Commonwealth of Puerto Rico, Jose Fuentes–Agostini, Secretary of Justice, San Juan, PR, for defendants.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiffs, Edgar Rodríguez–Oquendo ("Rodríguez"); his wife, Elsa Pérez–Adorno ("Pérez"); and their conjugal partnership, bring an action against Defendants Pedro Toledo–Dávila ("Toledo"), Superintendent of the Puerto Rico Police Department; Salvador Padilla, a police officer of the Puerto Rico Police Department; José Gómez–Gónzalez ("Gómez"), a police officer of the Puerto Rico Police Department; and two unknown police officers of the Puerto Rico Police Department. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 against Defendants in their individual capacities. Plaintiffs also bring claims pursuant to Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141 (1991).

Defendants move to dismiss Pérez and the conjugal partnership's federal section 1983 claim pursuant to Fed.R.Civ.P. 12(b)(6), alleging a lack of standing. Secondly, Defendants move for summary judgment on Plaintiff Rodríguez' section 1983 claim against Toledo, asserting the affirmative defense of qualified immunity.

### I.

### Facts

Plaintiffs allege that on or about September 26, 1996, at approximately 7:30 A.M., they were en route to their jobs at the Puerto Rico Treasury Department. Rodríguez left his wife, Pérez, in a shop to buy breakfast while he parked his car in the Covadonga Parking lot located next to the Treasury Department. While he was in the parking lot, Rodríguez states that two men in civilian clothing, Defendants Padilla and Gómez, approached him and began to ask him questions about his car. Rodríguez states that he thought the Defendants were going to rob him and, there-

fore, did not respond and walked quickly towards the parking lot exit.

Plaintiffs state that, without identifying themselves as police officers, Defendants Padilla and Gómez followed him and began to curse at him. Finally, when they were on the sidewalk near the Treasury Department, they hit him in the head and started to beat him.

Pérez, Rodríguez' wife, witnessed the Defendants beating Rodríguez, and asked them to leave her husband alone. Several employees of the Treasury Department witnessed the incident, as well as a television crew of Channel 11. A security guard from the Puerto Rico Telephone Company intervened to stop the beating.

After the beating, Defendants Padilla and Gómez identified themselves as police officers, and arrested Rodríguez. Rodríguez states that they tightly handcuffed him in a painful manner and took him to the 116th Precinct in Puerta de Tierra, San Juan, where he sat shackled for about one-and-a-half hours.

Rodríguez states that, although he was seriously injured, he did not receive medical care until a security guard from the Treasury Department demanded that the police take Rodríguez to the hospital. Defendants Padilla and Gómez took Rodríguez to a medical facility. Upon Plaintiff Rodríguez' release from the medical facility, Padilla and Gómez charged him with disturbing the peace, resisting arrest, making threats, and aggravated assault. Plaintiff Rodríguez denied these charges, and approximately one month later, all the charges were dismissed.

Plaintiffs allege that as a result of Defendants' violent actions, Rodríguez suffered physical pain, and suffered and continues to suffer from mental anguish. Furthermore, Plaintiff Pérez began to have psychiatric problems allegedly as a result of witnessing the assault, and miscarried a seven-month pregnancy. Plaintiffs state that Defendants have deprived them of their rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Furthermore, Plaintiffs claim that Defendant Toledo, as a matter of policy and practice, and with deliberate indifference, has failed adequately to discipline, train or supervise police officers with respect to citizens' rights. Plaintiffs state that this failure on the part of Defendant Toledo caused the Defendant officers to engage in the unlawful conduct alleged.

## II.

### Legal Standard for Motion to Dismiss

A defendant may move to dismiss an action against it based only on the pleadings for "failure to state a claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6). In assessing a motion to dismiss, "[w]e begin by accepting all well-pleaded facts as true, and we draw all reasonable inferences in favor of the [non-movant]." *Washington Legal Foundation v. Massachusetts Bar Foundation,* 993 F.2d 962, 971 (1st Cir.1993); *see also Coyne v. Somerville,* 972 F.2d 440, 442–43 (1st Cir.1992). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## III.

### Standard for Summary Judgment

The standard for summary judgment is straightforward and well-established: A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Lipsett v. Univ. of Puerto Rico,* 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law,"

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and "genuine", "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of establishing the nonexistence of a "genuine" issue as to a material fact is on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and, (2) an ultimate burden of persuasion, which always remains on the moving party. *Id.* In other words, "[t]he party moving for summary judgment, bears the initial burden of demonstrating that there are no genuine issues of material fact for trial." *Hinchey v. NYNEX Corp.,* 144 F.3d 134, 140 (1st Cir.1998). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After such a showing, the "burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." *DeNovellis v. Shalala,* 124 F.3d 298, 306 (1st Cir.1997) (citing *Celotex,* 477 U.S. at 322–25, 106 S.Ct. 2548). Although the ultimate burden of persuasion remains on the moving party, the nonmoving party will not defeat a properly supported motion for summary judgment by merely underscoring the "existence of some alleged factual dispute between the parties;" the requirement is that there be a genuine issue of material fact. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505.

In addition, "factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505. Under Rule 56(e) of the Federal Rules of Civil Procedure, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Summary judgment exists to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Medicine,* 976 F.2d 791, 794 (1st Cir. 1992).

## IV.

### *Analysis*

#### A. *Rule 12(b)(6): Perez's Standing Under Section 1983*

■ Defendants move pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss the section 1983 claims of Pérez and the conjugal partnership. The express language of section 1983 provides that only the party whose civil rights have been violated may bring a claim. *See Valdivieso Ortiz v. Burgos,* 807 F.2d 6, 7 (1st Cir.1986) (holding that plaintiffs could not maintain a section 1983 claim for loss of familial association unless the government action was aimed at the relationship between a parent and young child because section 1983 actions are personal and do not inure to any person other than the person injured); *Jaco v. Bloechle,* 739 F.2d 239, 242 (6th Cir.1984) (stating that claims brought pursuant to 42 U.S.C. section 1983 are "personal action[s] cognizable only by the party whose civil rights are violated"). "Family members do not have an independent claim under section 1983 unless the constitutionally defective conduct or omission was directed at the family relationship." *Torres v. United States,* 24 F.Supp.2d 181, 183 (D.P.R.1998) (citing *Brown v. Ives,* 129 F.3d 209, 211 (1st Cir.1997); *Robles Vazquez v. Garcia,* 110 F.3d 204, 206 n. 4 (1st Cir.1997)); *see also Broadnax v. Webb,* 892 F.Supp. 188 (E.D.Mich.1995) (stating that allowing persons other than those whose rights have been violated to sue would open the flood-

gates of 42 U.S.C. § 1983 litigation to an unmanageable point).

Elsa Pérez–Adorno is the wife of Edgar Rodríguez–Oquendo, the victim of the assault. Their conjugal partnership is a separate entity from either Pérez or Rodríguez and has a distinct identity. *Reyes Castillo v. Cantera Ramos, Inc.,* 96 JTS 9 at 605; *see also Maldonado Rodríguez v. Banco Central Corp.,* 95 JTS 48 at 806 n. 6. As the foregoing analysis demonstrates, only the victim of the civil rights violation, *i.e.,* the victim of the assault, can maintain a section 1983 claim. From the face of the complaint it appears that Pérez and the conjugal partnership rest their section 1983 claims on Rodríguez' civil rights violation by virtue of the assault. Neither Pérez nor the conjugal partnership demonstrate any act on the part of Defendants that was directed at Pérez. Rather, they complain that they suffered harm as a result of Defendants' acts which were directed at Rodríguez. Since family members cannot rest a section 1983 claim on the violation of a kin's civil rights, we dismiss those claims for lack of standing. *Buenrostro v. Collazo,* 777 F.Supp. 128, 134 (D.P.R.1991).

However, under Puerto Rico law, the spouse or relatives of an individual may have a derivative Article 1802 Civil Code action for injuries suffered directly by the individual. *See Santini Rivera v. Serv. Air, Inc.,* 94 JTS 121, 184 (1994); *Correa v. Puerto Rico Water Resources Authority,* 83 P.R.R. 139, 143–54 (1961); *Hernández v. Fournier,* 80 P.R.R. 94, 97–104 (1957). Thus, Pérez and the conjugal partnership may bring a derivative cause of action under Article 1802 for Rodríguez' claim under section 1983. *See Santini Rivera,* 94 JTS at 184; *Nieves Domenech v. Dymax Corp.,* 952 F.Supp. 57, 66

(D.P.R.1996); *Rodriguez v. Comas,* 888 F.2d 899, 905 (1st Cir.1989) (holding that federal district court may exercise pendent jurisdiction over state-law claims of spouse of section 1983 plaintiff provided the state-law claims share a common nucleus of operative fact with the section 1983 claims); *see also Rodriguez–Rios v. Cordero,* 138 F.3d 22, 26 (1st Cir.1998).

### B. Summary Judgment of Rodríguez' Claim on Basis of Defendant's Qualified Immunity

Section 1983 of Title 42 provides a substantive cause of action for damages and injunctive relief against individuals and governmental bodies who have deprived a person of the rights, privileges or immunities secured by the United States Constitution and laws.[1] In order to establish liability under section 1983, a plaintiff must first show that "[t]he conduct complained of was committed by a person acting under color of state law." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds; Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *see also Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 559 (1st Cir.1989); *Voutour v. Vitale,* 761 F.2d 812, 819 (1st Cir.1985).

Second, a plaintiff must show that the defendants' conduct in fact deprived him of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt,* 451 U.S. at 535, 101 S.Ct. 1908; *Gutierrez–Rodriguez,* 882 F.2d at 559; *Voutour,* 761 F.2d at 819.

Third, a plaintiff must show that the defendants' conduct caused this deprivation. *Id.* at 819. A plaintiff must establish for each codefendant that his or her own act or omission deprived the vic-

---

1. Section 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdic-

 tion thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.
 42 U.S.C. § 1983.

tim of protected rights. *Monell v. Department of Social Services,* 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (citing *Rizzo v. Goode,* 423 U.S. 362, 370–71, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)); *Gutierrez–Rodriguez,* 882 F.2d at 562; *Figueroa v. Aponte–Roque,* 864 F.2d 947, 953 (1st Cir.1989). Additionally, the defendants' conduct or inaction must have been intentional, *Simmons v. Dickhaut,* 804 F.2d 182, 185 (1st Cir.1986), grossly negligent, or must have "amounted to a reckless or callous indifference to the constitutional rights of others." *Gutierrez–Rodriguez,* 882 F.2d at 562.

Defendants state that Plaintiffs have failed to show that Defendants' actions were unreasonable. Defendants maintain that they acted without knowledge that a potential injury may result. Defendants argue that they are entitled to qualified immunity because they acted according to the law, in good faith, and within the scope of their duties. We find this defense unpersuasive.

Plaintiff Rodríguez has shown that the conduct complained of the assault—was committed by Puerto Rico police officers acting under the color of Puerto Rico law. Second, Rodríguez has shown that Defendant officers' conduct—assaulting him—in fact deprived him of his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Finally, Plaintiff Rodríguez has demonstrated causation: Defendants' intentional assault on him deprived Rodríguez of his rights.

 Qualified immunity is an affirmative defense shielding public officials from civil damages so long as their conduct does not violate any clearly—established statutory or constitutional right of which a reasonable person would be aware. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 704 (1st Cir.1993) (stating that the doctrine of qualified immunity "shields government officials performing discretionary functions from civil liability for money damages when their conduct does not violate 'clearly established' statutory authority or constitutional rights of which a reasonable person would have known"). The doctrine consists of two analytical prongs. First, the court must determine as a matter of law whether the constitutional right in question was clearly established at the time of the alleged violation. *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Martinez–Rodriguez v. Colon–Pizarro,* 54 F.3d 980, 988 (1st Cir.1995); *St. Hilaire v. Laconia,* 71 F.3d 20, 24, 27–28 (1st Cir.1995); *see also Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The second prong is whether a reasonable, similarly-situated official would understand that the challenged conduct violated the established constitutional right. *Id.*

There is no question that every person has a clearly-established constitutional right to be free from an unprovoked physical attack and capture by police officers. We believe that any reasonable, similarly-situated officer would understand that beating and arresting a civilian for no legitimate reason is a violation of that victim's constitutional civil rights. Accordingly, we find that Defendant officers are not entitled to qualified immunity.

### C. *Defendant Toledo*

Defendant Toledo argues that he cannot be held liable in this claim because he (1) was not personally involved in the acts which Plaintiffs allege, and (2) lacks supervisory liability.

 A "supervisor" for purposes of liability under section 1983 is "defined loosely to encompass a wide range of officials who are themselves removed from the perpetration of the rights-violating behavior." *Camilo–Robles v. Hoyos,* 151 F.3d 1, 6–7 (1st Cir.1998) (citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)). While supervisory liability in section 1983 cases

cannot be predicated upon a theory of respondent superior, a supervisor can be found liable if he formulates a policy or engages in a practice that leads to a civil rights violation committed by another. *Id.; Seekamp v. Michaud,* 109 F.3d 802, 808 (1st Cir.1997). In other words, a state official may be held liable under section 1983 in either his official or personal capacity for the behavior of his subordinates if both (1) the behavior of the subordinates results in a constitutional violation, and (2) the official's action was affirmatively linked to that behavior such that it could be characterized as "supervisory encouragement, condonation, or acquiescence" or "gross negligence amounting to deliberate indifference." *City of Oklahoma v. Tuttle,* 471 U.S. at 823, 105 S.Ct. 2427; *Lipsett,* 864 F.2d at 902. While an important factor in determining supervisory responsibility is whether the supervisor had notice of behavior that was likely to result in a violation of constitutional rights, *Febus–Rodriguez v. Betancourt–Lebron,* 14 F.3d 87, 93 (1st Cir.1994), actual knowledge of the offending behavior is not required. A supervisor "may be liable for the foreseeable consequences of such [offending] conduct if he would have known of it but for his deliberate indifference or willful blindness." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 582 (1st Cir.1994).

 Plaintiffs do not allege that Defendant Toledo was personally involved in the assault. Rather, they have alleged that Defendant Toledo was deliberately indifferent regarding the training and supervision of the officers and that this caused the Plaintiffs' injuries. However, this is the extent of Plaintiffs' allegation. Plaintiffs do not provide any specific instances which demonstrate Defendant Toledo's alleged deliberate indifference. To survive a motion for summary judgment, a section 1983 Plaintiff must provide specific factual allegations that demonstrate a supervisor's deliberate indifference and how that caused the constitutional violations. A "plaintiff must offer more than conclusory

and nonspecific allegations in order to overcome a motion for summary judgment based on qualified immunity." *Pride v. Does,* 997 F.2d 712, 716 (10th Cir.1993); *see also Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.1992) (stating that "[m]ere conclusory allegations are not competent summary judgment evidence"); *Lindsey v. Shalmy,* 29 F.3d 1382, 1383 (9th Cir.1994); *Bisbee v.. Bey,* 39 F.3d 1096, 1100 (10th Cir.1994). Plaintiffs have failed to fulfill their burden of alleging some specific factual instances which would demonstrate Defendant Toledo's deliberate indifference. Accordingly, we must grant Defendant Toledo's motion for summary judgment.

## V.

### *Conclusion*

In light of the foregoing analysis, we find that the section 1983 claims of Pérez and the conjugal partnership lack standing, although Pérez and the conjugal partnership may bring derivative claims under Puerto Rico law. Defendants' motion to dismiss the section 1983 claims of Pérez and the conjugal partnership is **GRANTED.**

Defendant Toledo enjoys qualified immunity and, accordingly, Defendant Toledo's motion for summary judgment is **GRANTED.** The motion for summary judgment of Defendants Padilla and Gómez is **DENIED.**

This disposes of *Docket Documents Nos. 15, 16, 25, and 26.*

**IT IS SO ORDERED.**