Jose Luis RAMÍREZ–DE LEÓN
et al., Plaintiffs

v.

Esteban MUJICA–COTTO
et al., Defendants.

Civil No. 02–2648(HL/ADC).

United States District Court,
D. Puerto Rico.

Nov. 17, 2004.

Roberto O. Maldonado–Nieves, Roberto O. Maldonado Nieves Law Office, San Juan, PR, for Plaintiff or Petitioner.

Nerylu Figueroa–Estasie, Sanchez Betances & Sifre, P.S.C., San Juan, PR, for Defendant or Respondent.

## OPINION AND ORDER

AIDA M. DELGADO–COLON, United States Magistrate Judge.

Plaintiffs filed this lawsuit on November 7, 2002, pursuant to 42 U.S.C. § 1983,

alleging violations of their constitutional rights pursuant to the Fifth, Thirteenth and Fourteenth Amendment of the United States Constitution, for deprivation of the right to due process, the imposition of involuntary servitude and retaliation for having accessed the courts (**Docket No. 1**). The plaintiffs also raise supplemental claims under Puerto Rico law. The plaintiffs seek declaratory and injunctive relief, as well as compensatory and punitive damages. An amended complaint was filed on March 5, 2003 (**Docket No. 18**). The parties have consented to the jurisdiction of a Magistrate–Judge (**Docket No. 36**).

Plaintiff José Luis Ramírez–De León (hereafter "Ramírez") is an attorney who practices in the area of environmental law and Carmen M. Rivera–Pagán is his spouse. Ramírez contends that: (a) the defendants deprived him of his property without due process of law; (b) he was deprived of his dignity and honor without due process of law; (c) he is being deprived of his protected liberty interest in pursuit of his occupation; (d) he was forced into involuntary servitude; and (e) is the victim of retaliation for exercising his right to access the courts. The plaintiffs move for partial summary judgment and defendants[1] also move for summary judgment (**Docket Nos. 60, 62**). Responses, replies and exhibits in support have also been filed (**Docket Nos. 61, 63, 67, 68, 72, 73, 78, 79**).

Ramírez complains that when he submitted his resignation to the Puerto Rico Environmental Quality Board, the decision to accept or reject his resignation was postponed and this postponement deprived him of his constitutional right to pursue his occupation. To date his resignation has not been accepted. He also alleges that the failure to accept the resignation caused him to be held in involuntary servitude in violation of the Thirteenth Amendment of the United States Constitution. Ramírez further alleges that he has been deprived, without due process, of property in the form of accrued vacation and sick leave pay. Finally, he alleges that the defendants retaliated against him for exercising his right to access the courts.

Plaintiffs recently filed a motion to clarify nature of trial in this case asserting that this matter is to be tried before a jury (**Docket No. 89**). The undersigned notes that no jury demand was made in the original complaint; however, a jury demand was made in the amended complaint. There appears to be an issue of whether the jury demand was made in compliance with the Federal Rules of Civil Procedure, that is, Rules 38 and 39. As a result, at the present time the case will remain set as a non-jury trial.

## I. The Facts

The basic facts in this matter are not in dispute. In 1989 plaintiff José Luis Ramírez–De León began working as an attorney in the Legal Affairs Division at the Puerto Rico Environmental Quality Board (hereafter "EQB"). In 1992 he was promoted to the position of Senior Staff Attorney, a career position. In March 2001 he was promoted to Legal Counsel of the Governing Board of the EQB, a trust position. In September 2001 he was reinstated to the position of Senior Staff Attorney. Plaintiff Carmen M. Rivera–Pagán (hereafter "Rivera") is the spouse of Ramírez.

Defendant Esteban Mujica–Cotto (hereafter "Mujica") is the President of the Puerto Rico EQB. Mujica, as the President

---

1. Defendants indicate that they have been advised that the claims against Magdalena Vázquez will be voluntarily dismissed. The docket sheet indicates that to date there has been no filing in this regard.

of the EQB, is the nominating authority of the same. In that capacity it is he who accepts or rejects the resignation of an employee. Defendant José Ramos–Fuentes (hereafter "Ramos") is the Director of the Management Affairs Area of the EQB. His job duties do not consist of supervising the legal division of the EQB. Defendant Magdalena Vázquez (hereafter "Vázquez") is the Chief of Human Resources of EQB. Both Ramos and Vázquez are supervised by Mujica. Defendant Zoraida Samó–Maldonado (hereafter "Samó") is the Director of the Legal Affairs Division of the EQB and was Ramírez's supervisor at the time he submitted his resignation.

On March 13, 2002, Ramírez authored a letter of resignation to his position within the EQB, effective March 31, 2002. The letter was given to Mujica, the President of EQB. As March 13, 2002, there were no pending investigations regarding Ramírez's work at EQB.

Prior to the time in which Ramírez presented his resignation letter, the EQB Legal Division was informed by attorney Miguel Morales of alleged improper conduct in which Ramirez had allegedly incurred. The former director of the Legal Division, Marta Martínez, did not inform Mujica of the matter in light of Ramírez's pending resignation. Thereafter, Samó, who substituted Attorney Martinez as Director of the Legal Affairs Division, informed Attorney Martínez that she had an obligation to inform Mujica of the allegations against Ramírez before Ramírez's resignation could be accepted.

On March 19,2002, after Ramírez submitted his resignation letter, Ramos, Mujica, and Samó did meet. During the meeting Samó showed and provided to Mujica a memorandum authored by Attorney Miguel Morales in which it was alleged that Ramírez had provided confidential EQB information to Attorney Rafael Toro–Ramírez (hereafter "Attorney Toro–Ramírez"). It is to be noted that Attorney Toro–Ramírez was the legal representative of Redondo Waste System, a company regulated by the EQB. At the meeting and in the presence of Samó, Mujica discussed with Ramos available information regarding monetary donations made by Redondo Waste Systems, Inc. and Fundación Fonalledas, Inc. Mujica then told Ramos that he had decided to refer the matter to the Office of Internal Audit to conduct an administrative investigation. Mujica also requested Samó to conduct an internal legal investigation but she declined as the investigation involved an attorney of the legal division of the EQB. Mujica later delegated the internal legal investigation to external legal counsel of the EQB, Gerardo Fernández–Amy (hereafter "Attorney Fernández").

At a later point in time, also in March, Mujica met with Ramos, Virgilio Vega–Vega (hereafter "Vega"), the then Director of Internal Audit of the EQB, and Attorney Fernández, outside counsel of the EQB. Mujica ordered Vega to conduct an administrative investigation and asked Attorney Fernández to provide his legal opinion on the evaluation of the allegations against Ramírez. Additionally, Mujica requested the Department of Justice, the Office of the Governmental Ethics, and the Comptroller's Office to investigate and evaluate the incidents related to Ramírez's conduct while a member of the EQB's Legal Division.

The record reflects that Mujica made written requests regarding the petitions for investigation. By memorandum dated March 20, 2002, Mujica requested that Vega and Attorney Fernández conduct an investigation regarding the complaint filed by Redondo Waste Systems, Inc. and the alleged disclosures of confidential informa-

tion by Ramírez. On the same date he also corresponded with the Interim Secretary of the Department of Justice, Pedro Gerónimo Goyco, and requested the Department of Justice to investigate and evaluate the allegations of improper conduct in which Ramírez had allegedly incurred. Mujica also requested that he promptly be notified if there was a justified basis to reject Ramírez's resignation.

On March 25, 2002, Mujica sent to the Director of the Office of Governmental Ethics and to the Comptroller's Office, a copy of the letter he had sent to the Interim Secretary of the Department of Justice for their review and corresponding action. Mujica delegated on the legal advisor and the Legal Division Office of the EQB to follow-up on the referrals he had made.

On March 26, 2002, Mujica authored a letter to Ramírez indicating that he was postponing his decision on whether to accept his [Ramírez's] resignation until the conclusion of the administrative investigation which related to monetary donations allegedly made by Redondo Waste and Fundación Fonalledas, Inc. and some other allegations made by Attorney Miguel Morales. Ramírez was advised that the EQB was unable to accept his resignation until the completion of the investigation and subsequent submission of a report and recommendation to the EQB. The letter further indicated that the administrative investigation was to be conducted by the Office of Internal Audit (i.e., Vega) and by external legal counsel (i.e., Attorney Fernández). The letter was hand delivered to Ramírez by Ramos. The record reflects that Ramírez then discussed the letter with Samó and Samó advised Ramírez to continue working until the conclusion of the investigation. Samó also informed Ramírez that she had no objection to recommending and approving him for a leave of absence and for the use of his annual

leave. She further advised Ramírez that if he failed to work after March 31, 2002, such action could constitute an abandonment of service that could result in taking disciplinary actions against him.

The last day that Ramírez worked at the EQB was March 29, 2002. On or about April 8, 2002, Ramírez provided to Samó a letter wherein he included a motion to withdraw as legal representative in all cases involving the EQB. Beginning in April 2002 Ramírez engaged in the private practice of law, in his own office, and by October 2002 he was sharing office space with another attorney, Lourdes Pagán.

Thereafter, Mujica informed Ramírez via a letter dated April 16, 2002, that the administrative investigation had not yet concluded, but that the report of the Office of Internal Audit was expected by no later than April 19, 2002. The letter was hand delivered to Ramírez by Samó. Also, Ramírez received a letter from Samó, dated April 16, 2002, in which Ramírez was apprised of the fact he was to be considered an employee of the EQB until the acceptance of his resignation, that he was absent from work without authorization, and that the matter was being referred to the Offices of the President and Human Resources for administrative or disciplinary action. Meanwhile, the internal administrative investigation was ongoing. As part of that administrative investigation, Ramírez was interviewed on May 2, 2002. At that time Ramírez was given notice of the fact that Mujica had requested an investigation and evaluation from the Department of Justice, the Office of Governmental Ethics and the Comptroller's Office.

On May 7, 2002, Attorney Fernández provided his evaluation report and legal opinion to Mujica regarding the alleged incidents surrounding Ramirez's resignation. He recommended Mujica to await for the determination and recommendation

of the Office of Governmental Ethics and the Department of Justice before taking any action regarding the acceptance or rejection of Ramírez's resignation. Next, on May 9, 2002, Vega of the Office of Internal Audit rendered his investigative report. Within this second report Mutica was recommended, among other things, to send a copy of the report to the Office of Governmental Ethics for it to determine whether Ramírez had incurred in violations of the ethic's laws or regulations.

During the latter part of May 2002, the Division of Public Integrity from the Commonwealth Department of Justice requested Samó for additional information in order to conduct the requested investigation. In May or June 2002, Samó provided said information. It is alleged that later on, an agent of the Division of the Public Integrity recommended or suggested to Samó that Mujica should not accept Ramírez's resignation until the conclusion of the requested investigation. In September 2002, Samó informed Mujica that the Division of Public Integrity of the Department of Justice had instructed that no decision was to be made with respect to Ramírez's resignation until the conclusion of its investigation. Samó, however, never received any written instructions or recommendations from the Commonwealth Department of Justice, the Office of Governmental Ethics or the Office of the Comptroller instructing that Ramírez's resignation was not to be accepted. Samó advised Mujica that he should await the Department of Justice's determination before making his decision

to accept or reject Ramírez's resignation. However, Samó has testified that as of November 2002 she believed that a reasonable amount of time had lapsed without accepting or rejecting Ramirez's resignation.

On August 20, 2002, plaintiffs filed a cause of action in the Puerto Rico State Court in the Court of First Instance[2] seeking relief as a result of the above stated facts, said relief including a claim regarding the accrued vacation and sick leave pay. On November 7, 2002, the plaintiffs filed this parallel action based upon the same set of facts, but alleging violations of the United States Constitution.

According to Ramos, as Director of Management Affairs for EQB he had nothing to do with the decision to request an administrative investigation. Also, Ramos claims he did not participate in or endorsed the letter drafted and sent by Mujica to the Office of Governmental Ethics, nor did Ramos recommend to Mujica that he request said investigation. Additionally, Ramos asserts he does not have the authority to accept or deny Ramírez's resignation nor can he approve the liquidation of accumulated vacation days for an employee. According to Ramos he never read the memorandum authored by Miguel Morales until the date he received the investigative report submitted by Vega, the Director of the Internal Audit Office for the EQB.

To date, November 2004, Mujica has not accepted Ramírez's resignation. Ramírez

2. The plaintiffs advise the Court that they have filed a motion to dismiss, without prejudice, the claims brought in the state court case (**Docket No. 91**). Apparently this is strategy on the part of plaintiffs to avoid a ruling by the Court on the issue of abstention. The record reflects that on October 22, 2004, the Court ordered the parties to advise, no later than October 29, 2004 of the status of

Civil Case No. KAC–2002–5331(504) and to brief the issue of abstention and whether it applied in this case. Plaintiffs' response, filed on October 29th, indicates that on October 25, 2004, they had filed a motion to withdraw the state court claims (**Docket No. 91**). The plaintiffs do not advise if in fact the state court case has actually been dismissed.

has requested payment of his accrued vacation and sick leave days [3] as of the date of his resignation but no payment has been received. Mujica has not given instructions to liquidate the balance of Ramírez's accumulated vacations days alleging that Ramirez's resignation has not been accepted and that, until then, there is not a total separation of service.

As of the date of the filing of the motions for summary judgment Mujica has not received information or reports on the investigation conducted by the Department of Justice, the Office of Governmental Ethics and Comptroller's Office or a recommendation as to Ramírez's resignation.[4]

## II. Requisites of § 1983 Claim

Plaintiffs bring this civil rights action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

As is well established, § 1983 creates no independent substantive rights, but rather provides a cause of action by which individuals may seek money damages for governmental violations of rights protected by federal law. *See, e.g., Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127

L.Ed.2d 114 (1994). Therefore, to state a cause of action under 42 U.S.C. § 1983, plaintiffs must allege: (1) that the defendants acted under color of state law; and (2) that their actions deprived the plaintiffs of a constitutional right. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

### A. Standing—§ 1983 Claim

The undersigned turns first to the issue of the standing inasmuch as it disposes of certain claims. The defendants argue that Carmen M. Rivera–Pagán, Ramírez's spouse, and the Conjugal Partnership of Ramírez and Rivera–Pagán lack standing to sue the defendants under 42 U.S.C. § 1983. Ramírez relies upon Puerto Rico law to argue that his spouse has a vested interest in his accrued vacation and sick leave pay.

■ The First Circuit has determined that actions under § 1983 are personal in the sense that the plaintiff must have himself suffered the alleged deprivation of constitutional or federal rights. *Judge v. City of Lowell,* 160 F.3d 67, 76 n. 15 (1st Cir.1998); *Valdivieso Ortiz v. Burgos,* 807 F.2d 6 (1st Cir.1986); *Caraballo Cordero v. Banco Financiero De Puerto Rico,* 91 F.Supp.2d 484, 488 (D.P.R.2000); *Rodríguez–Oquendo v. Toledo–Dávila,* 39 F.Supp.2d 127, 131 (D.P.R.1999). "Only the person toward whom the state action was directed, and not those incidentally affected, may maintain a section 1983 claim." *Guzmán Rosa v. de Alba,* 671 F.Supp. 882, 883 (D.P.R.1987). Additionally, a person may not sue or recover for

---

**3.** Ramírez asserts that the accrued vacation and sick leave days total $18,517. Defendants dispute this amount.

**4.** During the discovery process both agencies were requested to inform on the status of the referral for investigation made by Mujica or,

in the alternative, to certify the status of said investigations (**Docket Nos. 40 and 41**). No definite or preliminary report on the status of such investigations has been informed to the Court.

the deprivation of the civil rights of another. *Quiles ex rel. Proj. Head Start v. Hernández Colón,* 682 F.Supp. 127, 129 (D.P.R.1988). Finally, "[f]amily members do not have an independent claim under § 1983 unless the constitutionally defective conduct or omission was directed at the family relationship." *Rodríguez–Oquendo,* 39 F.Supp.2d at 131 (*citing Torres v. United States,* 24 F.Supp 2d 181, 183 (D.P.R. 1998)); *See also Cortés–Quiñones v. Jiménez–Nettleship,* 842 F.2d 556, 563 (1st Cir. 1988).

The case law is clear that only Ramírez, and not co-plaintiffs Rivera–Pagán and the Conjugal Partnership of Ramírez and Rivera–Pagán, may recover damages for a § 1983 violation. Therefore, the causes of action under § 1983 of co-plaintiffs Rivera–Pagán and the Conjugal Partnership of Ramírez and Rivera–Pagán must be and are **DISMISSED, with prejudice.**

### III. Summary Judgment

Plaintiff Ramírez moves for partial summary judgment. He seeks judgment on his due process claim on the basis that there is no genuine issue of material fact regarding the issue that the defendants refused to accept his resignation and failed to allow him to collect monies he is owed. More particularly, Ramírez argues that his constitutional rights were violated when the defendants refused to accept or reject his resignation thus depriving him of his liberty right to freely choose and/or resign from a job and his property right in accrued vacation and sick leave pay, all without due process of law.

Defendants Mujica, Ramos, Vázquez and Samó move for summary judgment in their official and personal capacities under a variety of theories including claims to the effect that Ramírez failed to: (a) demonstrate that the defendants were personally involved in the alleged constitutional viola-

tions; (b) state a claim for deprivation of property without due process of law under the Fourteenth Amendment; and that (c) Ramirez failed to state a claim for violation of the provision of involuntary servitude under the Thirteenth Amendment. The defendants further assert, in their individual capacity, they are entitled to qualified immunity, and that plaintiff Rivera–Pagán (Ramírez's wife) lacks standing to sue under § 1983. The defendants move the Court to dismiss the federal and state claims, without prejudice, for want of jurisdiction.

Neither party moved for summary judgment as to the claim that the defendants, acting under color of state, took retaliatory actions against Ramírez for exercising his protected constitutional right to access the courts. *See* Amended Complaint, para. 23, **Docket No. 18.** Plaintiffs advise the Court that they withdraw these claims (**Docket No. 91**). Accordingly, this claim, as to all defendants, is considered **WIHDRAWN.**

#### A. Legal Standard: Summary Judgment

A motion for summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Wolf v. Gruntal & Co.,* 45 F.3d 524, 527 (1st Cir.1995); *National Amusements, Inc., v. Dedham,* 43 F.3d 731, 735 (1st Cir.1995). The First Circuit delineated the manner in which Federal Rule of Civil Procedure 56, functions:

Once a properly documented motion has engaged the gears of Rule 56, the party to whom the motion is directed can shut down the machinery only by

showing that a trialworthy issue exists. As to issues on which the summary judgment target bears the ultimate burden of proof, she cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. Not every factual dispute is sufficient to thwart summary judgment; the contested fact must be "material" and the dispute over it must be "genuine." In this regard, "material" means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, "genuine" means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.

*McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995) (citations and some internal punctuation marks omitted).

The Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). While carrying out that task, the Court safely can ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Suárez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir.2000) (quoting *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)).

Once a movant has made a preliminary showing that there exists no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law, the nonmovant bears the burden to show the existence of a genuine material issue, *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir.1996), and must "pro-

duce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir.1999) (citation and internal punctuation omitted); Fed.R.Civ.P. 56(e). The nonmovant cannot meet this burden by mere allegation or denial of the pleadings. Fed. R.Civ.P. 56(e). Nor can the nonmoving party avoid summary judgment by relying on conclusory allegations, improbable inferences, unsupported speculation, or "[b]rash conjecture coupled with the earnest hope that something concrete will materialize." *J. Geils Band Employee Benefit Plan*, 76 F.3d at 1251 (quoting *Dow v. United Bhd. of Carpenters*, 1 F.3d 56, 58 (1st Cir.1993)). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir.2001) (citation and internal punctuation omitted). "If no genuine issue of material fact emerges from this perscrutation, then the case may be ripe for summary adjudication." *Suárez*, 229 F.3d at 53.

## B. Personal Involvement

Defendants also move for summary judgment asserting that Ramos and Samó lack the requisite personal involvement to invoke liability under § 1983. Defendants argue that the evidence in the record proves that Ramos and Samó were not personally involved in the personnel action taken against Ramírez.

An element of a § 1983 claim is that defendant must be personally and directly involved in causing the violation of the plaintiff's federally protected rights. *Voutour v. Vitale*, 761 F.2d 812, 819 (1st Cir.1985). This element requires a show-

ing of a causal connection between the specific defendant and plaintiff's federal rights deprivation. *See: Lipsett v. University of Puerto Rico,* 864 F.2d 881, 902 (1st Cir.1988). This may consist of direct acts by the defendant, certain acts performed at defendant's direction, or his knowledge and consent. In other words, the defendant must have personal involvement in the alleged constitutional deprivation. Under this scenario, each defendant individually responds for his own acts and omissions in the light of his own duties. *Rizzo v. Goode,* 423 U.S. 362, 370, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Additionally, as there is no respondeat superior liability under § 1983, liability in damages can only be imposed upon officials who were involved personally in the deprivation of constitutional rights. *See Kostka v. Hogg,* 560 F.2d 37, 40 (1st Cir.1977).

■ Defendants contend that it is undisputed that Ramos and Samó are not and were not the nominating authority of the EQB and that they have no authority in the EQB to provide any "official" remedy to Ramirez's claims. Ramos and Samó further argue that neither of them made a decision or took any adverse personnel action against Ramírez for the claims raised by plaintiff in the amended complaint. Finally, they contend that there were not personally or directly involved in the actions that Ramirez contends violated his constitutional rights and, as such, they are not liable for the alleged wrongdoings.

In turn, Ramírez concedes that Samó and Ramos do not have the authority to make decisions regarding the acceptance or rejection of his resignation. Nevertheless, he contends that these two defendants could still be liable given their participation in the process pursuant to which

Mujica decided not to accept Ramírez's resignation. In support of his contention, Ramírez points to the following facts: prior to the time he submitted his resignation there were no investigations pending against him; once Ramírez submitted his resignation Samó and Ramos were the two EQB officials who brought to Mujica's attention his alleged wrongdoings. More so, it was Samó and Ramos who provided advice to Mujica regarding the administration and operation of the EQB. Also, it was Samó who recommended to Mujica not to take any action regarding the acceptance of Ramirez's resignation until completion of the investigation by the Commonwealth Department of Justice. Ramírez concludes that these facts support his averment that Ramos and Samó had an important role in the personnel actions taken against him.

The facts before the Court indicate that Ramos lacks the requisite personal involvement necessary to establish liability under a § 1983 claim. It is undisputed that Ramos did not supervise the legal division of the EQB. More so, he had nothing to do with the decision to request an administrative investigation, but rather that decision was made by Mujica. In fact, Ramos did not read the memorandum of Attorney Morales which depicted the allegations being made against Ramírez, until after the Office of Internal Audit submitted its investigative report. More so, it was Mujica who advised Ramos of other allegations being simultaneously made against Ramírez. Also, Ramos did not participate in the drafting of the letter sent by Mujica to the Office of Governmental Ethics requesting an investigation, nor did Ramos recommend to Mujica to request said investigation. Finally, the evidence on record shows that Ramos does not have the authority to accept or deny Ramírez's resignation from employment

nor could he approve the liquidation of accumulated vacation days for an employee. Even viewing the facts in the light most favorable to Ramírez, they simply fail to establish Ramos' personal involvement as required so as to impose liability under § 1983. Therefore, the Motion for Summary Judgment on the basis that Ramos lacks personal involvement and thus is not liable under plaintiffs' § 1983 claim is **GRANTED**.

■ Now we turn to consider Samo's actions in light of the § 1983 standard. Samó also asserts that she lacks the personal involvement for the personnel action taken against Ramírez. Unlike Ramos, the facts before the Court indicate that Samó had involvement in the actions taken against Ramírez, sufficient to defeat summary judgment. Samó was Ramírez's supervisor prior to the time he submitted his resignation. It was Samó who determined to inform Mujica of the allegations against Ramírez even though the prior Director of the Legal Division had determined such action was not necessary in light of Ramírez's resignation. It was Samó who provided to Mujica the information that triggered the administrative investigation process. It was Samó who advised Ramírez to continue working until the administrative investigation was concluded. It was Samó who told Ramírez that if he did not work after March 31, 2002, such an action could constitute an abandonment of service that could result in disciplinary actions against him. It was Samó who sent a letter to Ramírez informing that he would be considered an employee of the EQB until the acceptance of his resignation and that the matter was being referred to the Office of the President and the Office of Human Resources. Finally, it was Samó who advised Mujica to await for the decision of the Department of Justice before making any determination to accept or reject Ramírez's resignation.

When viewing these actions in their totality it is evident that Samó is implicated in the alleged deprivation of Ramírez's constitutional rights. Accordingly, Samó's Motion for Summary Judgment on the basis of lack of personal involvement is **DENIED**.

### C. Due Process

Most of the claims raised by Ramírez fall under the auspices of due process. Indeed, the parties have filed cross-motions for summary judgment on the issue. Ramírez contends that his right to due process was violated in that he was denied the right to freely choose a job and to resign from it and to liquidate vacation and sick leave accrued upon termination of employment. Ramirez further argues that this due process right was triggered the moment the defendants, in not accepting his resignation, failed to comply with personnel regulations, particularly Puerto Rico Personnel Regulation 2186,[5] §§ 9.2 and 9.4.

The defendants argue that in order for Ramírez to trigger due process concerns, he must have sufficient evidence to establish that under Puerto Rico law he has an entitlement or property right to the lump sum of money for the leaves of absences he may have accumulated. Defendants posit that because Mujica has not accepted Ramírez's resignation, he has not been completely and absolutely separated from public service and as such has not acquired a property interest in the lump payment of accumulated leave. They further argue that with regard to the decision with respect to Ramírez's resignation and the liquidation of accumulated vacation and sick

---

5. Formerly Regulation No. 2663.

leave benefits, same is not an adverse decision of "such severity of harm" to warrant relief under § 1983.

In response to Ramírez's motion for summary judgment, defendants also argue that there is no protected property or liberty interest in resigning a position. They contend that the Puerto Rico Personnel Regulations for Career Employees, Section 8.3, obliged them to refer for investigation the case and Ramirez's alleged misconduct to the Puerto Rico Office of Government Ethics and Justice Department, and to await the results of the investigations before making a final determination on whether to accept or not Ramírez's resignation. More so, they argue that Ramírez has no procedural due process right to be free from pending administrative investigations, and that Ramírez has no liberty right to be free of the administrative investigations that may damage his reputation. Finally, the defendants argue that plaintiffs have adequate state remedies to protect their individual due process rights and, as such, this § 1983 claim cannot stand. In support, defendants point to the fact that plaintiffs filed a parallel legal action in Puerto Rico Court of First Instance to recover the amounts Ramírez claims he is owed based on accrued vacation and sick leave benefits.

■ The Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life liberty or property without due process of law." *U.S. Const. amend XIV.* The substantive component of due process protects against "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). There are two theories under which a plaintiff may bring a substantive due process claim. Under the first, a plaintiff must demonstrate a deprivation of an identified liberty or property interest protected by the Fourteenth Amendment. *Pittsley v. Warish,* 927 F.2d 3, 6 (1st cir.1991) (citing *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)). Under the second, a plaintiff is not required to prove the deprivation of a specific liberty or property interest, but rather, he must prove that the state's conduct "shocks the conscience." [6] *Pittsley,* 927 F.2d at 6 (quoting *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952)). In the case at bar, Ramírez does not allege that the state's conduct shocks the conscience, but rather he asserts he has identifiable liberty or property interests; those being the liberty interest in his right to resign from employment and pursue an occupation and his property interest in his accrued vacation and sick leave pay.

■■ Once a liberty or property interest is established the Court proceeds to examine what process is due under particular circumstances. *Reardon v. United States,* 947 F.2d 1509, 1517–18 (1st Cir. 1991). In this respect the due process referred to is procedural due process. Procedural due process requires that the procedures provided by the state in effecting the deprivation of life, liberty or property are adequate in light of the affected interest. *Pittsley,* 927 F.2d at 6. The Court determines if there is available an adequate remedy under commonwealth

---

**6.** The First Circuit has found "conscience shocking" conduct only where the state actors engaged in "extreme or intrusive physical conduct." *Souza v. Piña,* 53 F.3d 423, 427 (1st Cir.1995). It has not, however, foreclosed the possibility that words or verbal harassment may constitute "conscious shocking" behavior in violation of substantive due process rights, *see Souza,* 53 F.3d at 427; *Pittsley,* 927 F.2d at 6, but the threshold for alleging such claims is high. *See Cruz–Erazo v. Rivera–Montañez,* 212 F.3d 617 (1st Cir.2000).

law. If there is, it is fatal to Ramírez's procedural due process claim. *Smith v. Massachusetts Dep't of Correction,* 936 F.2d 1390, 1402 (1st Cir.1991); *see also Albright v. Oliver,* 975 F.2d 343, 347 (7th Cir.1992) ("The multiplication of remedies for identical wrongs, while gratifying for plaintiffs and their lawyers, is not always in the best interest of the legal system or the nation."), *aff'd,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Quite simply, "a procedural due process claim may not be redressed under section 1983 where an adequate state remedy exists." *Reid v. New Hampshire,* 56 F.3d 332, 341 (1st Cir.1995). In order to ascertain the adequacy of the procedures available to plaintiffs " 'it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure ... effecting the deprivations, and any remedies for erroneous deprivations provided by statute or tort law.' " *Licari v. Ferruzzi,* 22 F.3d 344, 347 (1st Cir.1994) (citing *Zinermon v. Burch,* 494 U.S. 113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)).

The laws of Puerto Rico create a right for a public employee to appeal an adverse employment decision to an administrative board, as well as a right to subsequent judicial review in the state courts. 3 P.R. Laws Ann. §§ 1394–1396. Section 1394

specifically refers to cases when an employee "alleges that an action or decision affecting him violates any right granted" to him by virtue of the provisions of the Puerto Rico Public Service Personnel Act. Ramírez fails to allege or provide any facts to support or establish that there was no post-deprivation opportunity to remedy the decisions made by the EQB, or that the procedure provided by Puerto Rico law in and of itself violated constitutional due process. Plaintiff makes no mention of whether he availed himself of any administrative procedures. Indeed, it appears that Ramírez bypassed the remedies available to him in favor of the civil action he filed in the Puerto Rico local court.

## 1. Right to Pursue an Occupation and/or Resign from an Occupation

■ Even though Ramírez has available an administrative adequate remedy, the Court will address the specifics of plaintiff's due process claims. Ramírez argues that when defendants did not accept his resignation they violated his right to due process by not complying with the regulations and in doing so they are violating his right to freely resign and chose other professional pursuits in life. Ramírez relies heavily upon his allegations that the defendants departed from the applicable Puerto Rico Regulations with regard to his resignation, particularly Regulation 2186, Sections 9.2 [7] and 9.4.[8] However, "[a]n agen-

7. The EQB has its own set of Personnel Regulations, Reglamento de Personal para los Empleados de Carrera, Junta de Calidad Ambiental, found at Regulation No. 4105, and dated February 8, 1990. Ramírez does not refer to the EQB's Regulations, but instead refers to the general personnel regulations for Puerto Rico government employees. Article 9.2 referred to by Ramírez concerns disciplinary actions. The EQB Regulations for disciplinary actions is found at Article 8.3 relied upon by Ramírez. The main difference between the two regulations is that Section 9.2 states

that the nominating authority will make an investigation within ten days from the moment it had official knowledge of facts and it will make a determination as to whether it will undertake an administrative measure. EQB Section 8.3 provides that an investigation will be made within a reasonable time from when there is official knowledge of the facts.

8. See nt. 6. Section 8.6 of the EQB Regulations is almost identical to Section 9.4 relied upon by Ramírez. It provides that

cy's failure to follow its own rules may be significant in administrative law, but the federal Due Process Clause does not incorporate the particular procedural structures enacted by state or local governments; these claims should be pursued, if at all, under Puerto Rico law." *Torres–Rosado v. Rotger–Sabat*, 335 F.3d 1, 10 (1 st Cir. 2003).

Ramírez takes further exception to the fact that an investigation continues with no finality in sight. In response the defendants refer to Section 8.3 of the Puerto Rico Personnel Regulations for Career Employees, amended on December 15, 1995. Section 8.3 made it obligatory that "prior to making any official determination regarding the violation or non-violation of [ethical] norms, [the agency] shall consult in writing with the Office of Government Ethics and the latter shall state its position before a final decision is made." The defendants explain that as a result the EQB can take no action on Ramírez's resignation until a decision from the investigation is made by the Office of Government Ethics.

■ It is clear that there has been no adjudication of the allegations leveled against Ramírez. Without an adjudication of legal rights the Due Process Clause does not require that "the full panoply of judicial procedures be used." *Aponte v. Calderón*, 284 F.3d 184, 193 (1st Cir.2002) (citations omitted). Indeed, the First Circuit recognized that "that investigations conducted by administrative agencies, even when they may lead to criminal prosecu-

tions, do not trigger due process rights." *Aponte*, 284 F.3d at 193. This means that investigations, alone, do not trigger due process rights; there must also be an adjudication. *Id.*

With regard to Ramírez's right to freely choose his profession, the United States Supreme Court recognized early on "that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment." *Conn v. Gabbert*, 526 U.S. 286, 291–92, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999) (citations omitted); *see also Board of Regents v. Roth*, 408 U.S. 564, 572, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (the liberty interest guaranteed by the Fourteenth Amendment includes the right "to engage in any of the common occupations of life") (citation and internal quotation marks omitted). The Puerto Rico Constitution also recognizes "the right of every employee to choose his occupation freely and to resign therefrom." *P.R. Const. art. II, § 16*. Nevertheless, the United States Supreme Court also observed that case law establishing a liberty interest in the Fourteenth Amendment right to practice one's profession " deal[t] with a complete prohibition of the right to engage in a calling," and not merely a "brief interruption" in one's ability to pursue an occupation or profession. *Conn v. Gabbert*, 526 U.S. at 287, 119 S.Ct. 1292.

■ Ramírez argues that the decision of Mujica to postpone acceptance of his resignation deprives him of his liberty interest to pursue an occupation with due

An employee may resign his position freely through written notice to the President (of the EQB). This communication will be made no less than fifteen (15) days prior to the last day of work, except that the President shall, within the term of fifteen (5) days of the resignation being submitted, notify the employee if he accepts it or rejects it due to the existence of reasons that

justify the investigation of the conduct of the employee. In case of rejection, the President, within the shortest time possible, shall undertake the investigation and determine if he accepts the resignation or proceeds to bring charges.
Reglamento de Personal para los Empleados de Carrera, Junta de Calidad Ambiental, Regulation No. 4105, Section 8.6.

process of law. Ramírez also argues that the failure to accept his resignation has restrained his liberty as he is limited in his law practice. He explains that since his resignation was not accepted he cannot engage in the practice of law before the EQB on behalf of clients who may need representation before said agency. He further explains that there is a one-year waiting period before he can appear before the board and that the one-year period does not commence until his resignation is accepted. In spite of the fact he tendered his resignation in 2002, as of today, that is, two years later, the one-year term has technically not been triggered. The defendants contend that they are entitled to summary judgment as to this issue as Ramírez fails to show any deprivation of his rights and has not presented any facts indicating a specific objective harm or injury.

In light of the above-stated facts, it is considered . that Ramírez's due process claim does not rise to the level of a protected liberty interest. It is undisputed that Ramírez continues to practice law, albeit not in every forum he wishes. His restriction, however, does not rise to the level of a "complete prohibition" of the right to engage in his calling. He continues to practice his profession as a lawyer. Therefore, as to this issue plaintiffs' Motion for Summary Judgment is **DENIED** and defendants' Motion for Summary Judgment is **GRANTED.**

## 2. Accrued Vacation and Sick Leave Time

■ Ramírez also claims a due process violation as a result of the defendants' failure to pay him for his accrued vacation and sick leave time. Constitutional procedural due process protects only those aspects of public employment recognized as property interests. *Torres–Rosado v. Rot-*

*ger–Sabat,* 335 F.3d 1, 9 (1st Cir.2003). Accordingly, the Court looks to Puerto Rico law to determine if Ramírez has a protected interest in his right accrued vacation and sick leave pay.

■ Puerto Rico law provides that for governmental employees "there shall be paid a lump sum of money for the leaves of absence he may have accumulated ... and for sick leave he may have accumulated ... on his removal from service." 3 P.R. Laws Ann. § 703a. Said statute further provides that "upon ceasing the rendering of services, the office which has been held by the officer or the employee shall be considered vacant, and the period subsequent to the date on which the rendering of the services ceased shall not be considered as equivalent in leave time to said final payment." *Id.*

The Puerto Rico Supreme Court has held that "payment of the accumulated vacation leave is only in order when the resignation or separation results in the definite severance from service." *Rodríguez Cruz v. Padilla Ayala,* 125 D.P.R. 486, 25 P.R. Offic. Trans. 486, 1990 WL 657488 (1990). Indeed, the Justice Secretary interprets 3 P.R. Laws Ann. § 703a as follows:

Although this section includes resignation among the reasons for leaving the service, for purposes of the lump sum payment authorized, one can reasonably read that given the general meaning of said section, the resignation referred therein is that resulting from the severance, not of the transfer from one position to another, but the total and absolute severance of the employee from governmental service; a prior and indispensable requirement for such payment.

Secretary of Justice's Opinion No. 6 of 1971; See also, Op. Sec. Just. Nos. 1 and 6 of 1978; Op. Sec. Just. No. 22 of 1979; Op. Sec. Just. No. 16 of 1982.

The defendants contend that Ramírez has no property interest in his accrued vacation and sick leave days, arguing that case law supports he is not definitely and completely removed from the public service. In turn they argue, this supports their position that because he has no property interest, he has no right to due process in obtaining such payment. Defendants further argue that said decision regarding the accrued benefits does not rise to the level of or is of such severity as to warrant § 1983 relief.

Ramírez argues that he is entitled to the lump sum payment of vacation and sick leave due him, inasmuch as the defendants completely disregarded their own regulations, particularly the dispositions of Section 9.2 and Section 9.4 regarding the time frame or reasonable time during which a decision must be made in regards. To that extent, he argues, that he has been deprived of the enjoyment of vacation and sick leave pay in the amount of $18,517. According to Ramírez, this constitutes a harm severe enough to amount to a cause of action pursuant to § 1983. Ramírez argues that the defendants' position that he has failed to show a harm severe enough to assert a cause of action under § 1983 is ludicrous and untenable.

The facts do not support Ramirez's position that the EQB disregarded its rules and regulations. The evidence shows it attempted to comply with said rules. Here, Ramírez submitted his resignation on March 13, 2002, and he was advised by Mujica on March 26, 2002, that the decision to accept his resignation was being postponed pending an investigation. Although Section 8.6 does not provide the option of "postponement" but rather it requires that the employee be notified that the resignation is not either accepted or rejected due to reasons that justify an investigation. Although Mujica does not

specifically state it, the inference to be drawn in regards to the purpose of the March 26th letter is that Mujica was rejecting Ramírez's resignation, and this implied rejection of Ramírez's resignation was made within the 15–day period set forth in Section 8.6. The fact that Ramírez's resignation was not being accepted is further corroborated by Samó's actions who on March 26, 2002, after having provided Ramírez copy of Mujica's letter, advised Ramírez that he was to continue working at the EQB.

Regardless, there remains a question of fact as to whether Ramírez has a property interest in his accrued vacation and sick leave. The defendants have a valid point while arguing that Ramírez is not completely severed from his former position as an investigation remains pending and Ramírez's resignation has never been accepted. Conversely, Ramírez has a valid point while asserting that defendants have not acted reasonably and in a timely manner in completing their investigation; more so, if we are to consider that two years after having tendered his resignation and being referred for investigation, neither the EQB nor the Commonwealth Department of Justice can assess the status of such referral and/or certify whether the investigation in ongoing. These respective positions, however divergent, lend little to the Court's analysis in light of the fact that the property interests at issue are insignificant.

 An essential element of the due process clause is that "an individual be given an opportunity for a hearing before he is deprived of any significant property interest." *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 544–45, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Courts have long recognized, however, that de minimis property interests do not trigger procedural due process protections. *See*

*Goss v. López,* 419 U.S. 565, 575, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Several courts have applied this principle to minor infringements upon property interests. See *Germano v. City of Mayfield Heights,* 648 F.Supp. 984, 985 (N.D.Ohio 1986), *aff'd* 833 F.2d 1012 (6th Cir.1987) (property right in sick leave and clothing allowance deemed insignificant, therefore, no pretermination hearing required as long as there exist postdeprivation procedures under state law); *Pitts v. Bd. of Educ. of U.S.D. 305,* 869 F.2d 555, 556 (10th Cir.1989) (a two-day suspension with pay does not deprive an employee of any "measurable property interest"); *Sewell v. Jefferson County Fiscal Court,* 863 F.2d 461, 467 (6th Cir.1988) (no due process violation where the plaintiff was demoted without a hearing but subsequently reinstated with full back pay); *Hardiman v. Jefferson County Bd. of Educ.,* 709 F.2d 635, 638 (11th Cir.1983) (one-week suspension with pay was de minimis and did not trigger procedural due process).

In the present case, the undersigned finds that there is not a significant property interest at stake in the accrued vacation and sick leave. The property interest at stake consists merely of a lump sum payment for accrued vacation and sick leave days, that according to Ramírez totals approximately the sum of $18,517. In this regard, it is to be noted that some courts have found that employee benefits are minor or insignificant and, as such, do not rise to a § 1983 claim, while other courts have found that the issue arises under contract law rather than § 1983. *See: Balzano v. Township of North Bergen,* 649 F.Supp. 807 (D.N.J.1986) (no due process violation where plaintiff not reimbursed for unused sick leave because adequate postdeprivation hearing provided by state courts); *Ramsey v. Board of Education,* 844 F.2d 1268, 1272 (6th Cir.1988) (property interest in accumulated sick leave

should be protected under state breach of contract action rather than § 1983); *Diederich v. County of Rockland,* 999 F.Supp. 568 (S.D.N.Y.1998) (alleged loss without compensation of vacation time, personal holiday and sick leave time accruals did not rise to level of constitutionally protectable property interest); *Gendalia v. Gioffre,* 606 F.Supp. 363 (S.D.N.Y.1985) (even if employee had property interest in payment for unused vacation and sick leave, where adequate postdeprivation state remedies provided requisite due process, complaint failed to state a claim under § 1983).

Even assuming Ramirez has a property interest in his accrued vacation and sick leave, the same does not rise to the level of a significant property interest. As discussed above, case law supports these findings. More so, as previously discussed, Puerto Rico statutes provide Ramírez with an adequate postdeprivation remedy to contest the withholding of the accrued benefits. Therefore, the undersigned finds no due process violation with regard to the accrued vacation and sick leave time. Accordingly, as to this issue plaintiffs' Motion for Summary Judgment is **DENIED** and defendants' Motion for Summary Judgment is **GRANTED**.

### 3. Deprivation of Dignity and Honor

Defendants also move for summary judgment on Ramírez's claim that he was deprived of his right to due process when the defendants used false information or allegations to defame him and communicated these false allegations to other people and/or entities. The defendants seek to dismiss Ramírez's claims that defamatory statements deprived him of liberty interest in his dignity, good name and reputation. The defendants argue that the undisputed facts in this case show no

serious harm has befallen Ramírez with respect to his employment.

 The defendants are entitled to summary judgment on this issue. Ramírez brings this claim solely under the Constitution of the Commonwealth of Puerto Rico which in and of itself is not actionable under § 1983. Additionally, as the First Circuit recently noted and has held: damage to one's reputation alone does not trigger the protections of the Due Process Clause. *Aponte v. Calderón*, 284 F.3d 184, 195–196 (1st Cir.2002) (citing *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). More so, "reputational harms must be attached to some other alteration in status in order to raise a valid due process claim." *Aponte*, 284 F.3d at 195–196. This means that there must be a legal alteration in plaintiff's position before the courts will recognize a procedural due process claim. *Id.* The First Circuit Court of Appeals specifically noted that the Constitution of the Commonwealth of Puerto Rico does include a specific protection for reputation, however, it concluded that the Puerto Rican courts have not afforded greater protections to reputation than stateside jurisdictions. *Aponte*, 284 F.3d at 196; P.R. Const. art. II, § 8. Most important is that the facts before the Court do not support a determination that Ramírez has lost any legal rights because of the alleged defamation by government actors. Ramírez has not asserted a constitutionally protected interest in his reputation. Accordingly, defendants' Motion for Summary Judgment is **GRANTED** as to this issue.

## D. Involuntary Servitude

 The defendants seek summary judgment on Ramírez's claim that the failure to accept his resignation forced him into involuntary servitude with the EQB. The defendants argue that they have not forced Ramírez to work for the EQB by the use or threat of physical restraint or physical injury or by the use or threat of coercion through law or legal process. The defendants point to the undisputed fact that Ramírez has not worked at the EQB subsequent to March 31, 2002. They argue that since Ramírez was not forced to stay and work at the EQB, there was no involuntary servitude; hence no violation of the Thirteenth Amendment.

Ramírez argues that he was subjected to legal coercion in that he was notified that his resignation would not be accepted and he was further advised that his failure to report to work could subject him to charges for abandonment of work. Plaintiff argues that he is unable to freely engage in the practice of law, more so in the area of environmental law, since he cannot represent clients before the EQB or other governmental agencies in Puerto Rico.

 Involuntary service means a condition in which the victim is forced to work for the defendant by the use or threat of physical restraint or injury, or by legal coercion. *United States v. Kozminski*, 487 U.S. 931, 108 S.Ct. 2751, 101 L.Ed.2d 788 (1988). It is an action by the master that causes the servant to have, or to believe he has, no way to avoid continued service or confinement, of a "superior and overpowering force, constantly present and threatening." *Hodges v. United States*, 203 U.S. 1, 34, 27 S.Ct. 6, 51 L.Ed. 65 (1906). "It is not a situation where the servant knows he has a choice between continued service and freedom, even if the master has led him to believe that the choice may entail consequences that are exceedingly bad." *Kozminski*, 487 U.S. at 938, 108 S.Ct. 2751. There must be "law or force" that "compels performance or a continuance of the service." *United States v. Shackney*, 333 F.2d 475, 486–87 (2d Cir.1964).

Unless a plaintiff alleges that he does not have the option of leaving his job, his claim under the Thirteenth Amendment must be dismissed. *Rogers v. American Airlines, Inc.,* 527 F.Supp. 229, 231 (S.D.N.Y.1981). Also, the Thirteenth Amendment does not come into play "whenever an employee asserts that his will to quit has been subdued by a threat which seriously affects his future welfare but as to which he still has a choice, however painful." *Shackney,* 333 F.2d at 487. Finally, a claim under the Thirteenth Amendment cannot be sustained unless plaintiff proves that he was compelled to continue his employment or that he was prohibited from working elsewhere. *Cf. Brooks v. George County, Mississippi,* 84 F.3d 157, 162 (5th Cir.1996).

While Ramírez argues the he was subject to legal coercion, nothing can escape the fact that he no longer works at EQB, and he is not being forced to work there. It is undisputed that Ramírez continues to and is engaged in the practice of law, albeit not before the EQB. More so, Ramírez is not prohibited from working elsewhere nor was he compelled to continue his employment at the EQB. Accordingly, Ramírez has not satisfied an essential element of the cause of action of involuntary servitude. Therefore, the defendants' Motion for Summary Judgment on the issue of involuntary servitude is **GRANTED.**

## E. Qualified Immunity

Mujica argues that he is entitled to qualified immunity from liability for civil damages.[9] He argues that his conduct, if found to fall under § 1983, did not violated Ramírez's clearly established statutory or constitutional rights of which a reasonable person would have known. Plaintiff Ramirez, of course, argues that qualified immunity is inapplicable in the case at bar.

He contends that the officials knew that his rights were violated at the earliest by April or May 2002 when the investigations at the EQB were concluded and at the latest by November 2002, when Samó admitted to Ramos and to Mujica that a reasonable period of time had lapsed without any action having been taken on whether to accept or reject his resignation.

Qualified immunity shields government officers performing discretionary functions from civil damages insofar as their conduct does not violate a clearly established statutory or constitutional right which should have been known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Ringuette v. City of Fall River,* 146 F.3d 1, 5 (1st Cir.1998). In deciding whether an officer is entitled to qualified immunity, the Court must first determine whether the officer's alleged conduct violated a constitutional right. *Chavez v. Martinez,* 535 U.S. 1111, 122 S.Ct. 2326, 153 L.Ed.2d 158 (2002) (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "If not, the officer is entitled to qualified immunity, and [the Court] need not consider whether the asserted right was "clearly established." " *Id.*

The First Circuit Appellate Court has identified a three step process for evaluating qualified immunity claims. These are:

(1) whether the claimant has alleged the deprivation of an actual constitutional right; (2) whether the right was clearly established at the time of the alleged action or inaction; and (3) if both of these questions are answered in the affirmative, whether an objectively reasonable official would have believed that the action taken violated that clearly established constitutional right. *Nelson v. Kline,* 242 F.3d 33, (1st Cir.2001);

9. Defendant Samó did not move for summary judgment on the issue of qualified immunity.

*Abreu–Guzmán v. Ford,* 241 F.3d 69, 73 (1st Cir.2001); *see Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

*Starlight Sugar, Inc., v. Soto,* 253 F.3d 137, 141 (1st Cir.2001).

■■■ As the First Circuit Court of Appeals notes, "[t]his particular order of analysis 'is designed to "spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit." ' " *Id.* (citations omitted). Addressing the constitutional question first "promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Id.* In the present case even if the first two questions are answered in the affirmative,[10] then it must be determined whether Mujica believed that the action taken violated that clearly established constitutional right.

Mujica argues that he complied with Section 8.6 of the EQB's Personnel Manual and Regulations 2186 when he did not accept Ramírez's resignation within the term provided. He further argues that he referred the investigation of Ramírez and requested a recommendation with respect to the course of action to be followed as to Ramírez's resignation. Further Mujica argues that Ramírez's resignation has not been accepted due to the administrative processes followed by the Department of Justice, the Office of Governmental Ethics and the Comptroller's Office and asserts there are processes over which he has no control and agencies over which he has no authority to oversee the manner in which investigations are handled. Mujica notes and argues that it was recommended to him by the Office of Internal Audit and the external legal advisor (Attorney Fernández) to wait for the results of the investigations being carried out by the Department of Justice and the Office of Governmental Ethics before accepting the resignation. Finally, Mujica asserts he followed the directives established in Section 8.3 of the Puerto Rico Personnel Regulations for Career Employees which requires the government agency to consult, in writing, with the Office of Government Ethics prior to making any official determination regarding the violation or non violation of ethical norms. Section 8.3 further requires that the Office of Government Ethics state its position before a final decision is made by the governmental agency, here the EQB. This required the EQB to wait before proceeding to accept or reject Ramírez's resignation. Mujica argues that he had no reason to believe that the administrative process he followed was not correct.

Even when viewing the facts in the light most favorable to Ramírez, and giving every reasonable inference to him, we feel compelled to conclude that the facts simply do not allow for an inference that Mujica's conduct was objectively unreasonable. Mujica relied upon the recommendations and advice of various Puerto Rico governmental agencies and attorneys while pondering whether to accept or reject Ramírez's resignation. In every instance he was told to wait for the completion of the internal and external investigations. Also, Mujica was aware of the applicable laws, norms and regulations he was required to follow. It is undisputed that he abided by Article 8.3 for the investigative determination as required. The facts of this case evince that an objectively reasonable official would not have believed that the action taken at the time the decision was made

---

10. This presupposes that the plaintiffs alleged a constitutional violation. Earlier in this opinion it was determined that various of plaintiffs' claims did not rise to the level of a constitutional violation.

violated a clearly established constitutional right. Therefore, Mujica's Motion for Summary Judgment as to the issue of qualified immunity is **GRANTED.**

### F. Supplemental State Claims

█ The defendants move to dismiss the supplemental state claims brought against them. As a general rule, where the district court dismisses the federal claims before trial, the court should dismiss the state law claims without prejudice. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Rodríguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1177 (1st Cir.1995). To date there remains one claim pending—that is the claim found at paragraph 23 of the Amended Complaint that the defendants took retaliatory actions against Ramírez for exercising his protected right to access the Courts. However, plaintiffs have advised the Court that they are withdrawing without prejudice the retaliation cause of action (**Docket No. 91**). Accordingly, the retaliation claim is deemed withdrawn and, as such, there remains no federal claims pending. Therefore, any supplemental state claims are **DISMISSED,** without prejudice.

## IV. Conclusion

Plaintiff's Motion for Summary Judgment (**Docket No. 60**) is **DENIED.** Defendants' Motion for Summary Judgment (**Docket No. 62**) is **GRANTED in part** and **DENIED in part** as follows:

■ The Motion to Dismiss the causes of action under § 1983 of co-plaintiffs Rivera–Pagán and the Conjugal Partnership of Ramírez and Rivera–Pagán for lack of standing is **GRANTED;**

■ The Motion for Summary Judgment on the basis that Ramos lacks personal involvement is **GRANTED;**

■ The Motion for Summary Judgment on the basis that Samó lacks personal involvement is **DENIED;**

■ The Motion for Summary Judgment on the due process issue with regard to the right to pursue/resign from an occupation is **GRANTED;**

■ The Motion for Summary Judgment on the due process issue with regard to accrued vacation and sick leave time is **GRANTED;**

■ The Motion for Summary Judgment on the due process issue with regard to deprivation of dignity and honor is **GRANTED;**

■ the Motion for Summary Judgment on the issue of involuntary servitude is **GRANTED;**

■ The Motion for Summary Judgment as to the issue of qualified immunity as to Mujica is **GRANTED;** and,

■ The Motion to Dismiss the supplemental claims is **GRANTED,** and the supplemental state claims are **DISMISSED, without prejudice.**

The rulings made in this Opinion and Order disposes of all claims raised by plaintiffs. Accordingly, the Clerk of the Court is ordered to enter judgment in favor of defendants and against plaintiffs.

**SO ORDERED.**